IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MELISSA CARTER and CHRIS SMITH,§
                                §
              Plaintiffs,       §
VS.                             §      Civ. A. H-14-2776
                                §
DIAMOND URS HUNTSVILLE, LLC,    §
d/b/a THE CONNECTION AT         §
HUNTSVILLE, ASSET CAMPUS        §
HOUSING, INC.,THE CITY OF       §
HUNTSVILLE, TEXAS, OFFICER      §
STACEY SMITH-GALLAR, and        §
OFFICER CHRISTOPHER MYERS,      §
                                §
              Defendants.       §

**<u>OPINION AND ORDER</u>**

Pending before the Court in the above referenced cause, removed from state court on federal question jurisdiction and seeking damages for two "startlingly similar"[1] unconstitutional arrests and detentions without probable cause and use of excessive force, in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, Texas common law torts (false arrest, assault and battery, malicious prosecution, false imprisonment, negligence, and conspiracy), and the Texas Constitution, are (1) Defendants the City of Huntsville, Texas ("the City"), Stacey Smith, and Christopher Myers' ("Myers'") motion to dismiss Plaintiffs Melissa Carter ("Carter") and Chris Smith's claims under Federal Rule of Civil Procedure 12(b)(6)(instrument #3), and (2) Defendants Diamond URS Huntsville, LLC d/b/a The Connection at Huntsville ("The Connection") and Asset

---

[1] Plaintiffs' First Original Petition, #1-1, Ex. A at p. 1.

Campus Housing, Inc.'s ("ACH's") motion to dismiss pursuant to
Rule 12(b)(6) (#5).

## I.  Allegations of Plaintiffs' First Original Petition (#1-1)

At the relevant time, Defendants Stacy Smith and Myers were
officers employed by the City's Police Department.  Stacey Smith
was also employed by The Connection as a resident security officer.
Furthermore Stacy Smith was the estranged wife of Plaintiff Chris
Smith, and they were in the midst of an acrimonious divorce.
Defendants allegedly conspired to violate Plaintiffs'
constitutional rights by detaining, assaulting and battering,
falsely arresting, and maliciously prosecuting Carter and Chris
Smith.  Purportedly Myers "had a history and pattern of abusing his
office and power, particularly acting in concert with Defendant
Stacey Smith," and Stacy Smith allegedly "had a history of
collaborating with Myers in abusing police power."  #1-1 at pp. 3
and 7.

The Original Petition first addresses the arrest of Carter.
On August 15, 2012 Carter was asleep in her apartment at The
Connection when loud banging on her front door awakened her.
Through a peep hole she saw a uniformed Huntsville Police officer,
who turned out to be Myers.  When she opened the door, Myers told
her that there had been a complaint about a man running into her
apartment and that there was a smell of marijuana coming from
there.  Carter told him there was no man or marijuana in her
apartment and that he was welcome to look.  Myers entered and
ordered her to stand outside, where a female officer, subsequently

identified as Stacey Smith, was waiting.  Carter insisted she wanted to stay in her house while he looked around, but Myers allegedly became incensed, ordered her out, and physically attacked her, pulling her arms behind her back, bending her over a bar, and laying his full body weight against her,  causing her extreme pain. Myers accused her of resisting arrest, cuffed her hands so tightly that they caused excruciating pain, pulled her to her feet, led her out to her front porch, and shoved her to the ground.  Stacey Smith observed these actions, but did and said nothing.  Other officers arrived with a drug dog, which sat down outside Carter's closed apartment door; one officer stated that the dog made a "hit."  One officer led Carter through her apartment while she was handcuffed, humiliated, and crying in extreme pain.  The officer then turned her over to Myers, who transported her to the Walker County jail without ever telling her why she had been arrested.  After spending the night and the next day there, she was informed that Myers and Stacey Smith had charged her with Interference with Public Duties. The charges were subsequently dismissed.  Although Carter filed a complaint, it was ignored after Myers was indicted for Felony Official Oppression by a Grand Jury for a previous, similar attack. Myers later entered into a plea agreement and promised never to work in law enforcement again.  Stacey Smith is still employed at the Huntsville Police Department.

The petition further alleges that Chris Smith's vehicle was hit by a tractor trailer rig at approximately 11:25 p.m. on August 20, 2012.  Officers responded and ticketed the driver of the rig

for lack of insurance and of a trailer tag.  Learning that Stacy Smith's estranged husband had been hit in a traffic accident, Myers decided to use the event in a conspiracy with her against Chris Smith.  Even though Chris Smith had been fully interviewed, Myers drove up to the scene of the accident and ordered Chris Smith to step on a line as he was exiting his vehicle.  Myers then accosted Chris Smith, insisted Smith was drunk, and ordered him to submit to a test.  Smith passed the test, but Myers then drew and pointed his fire arm at Smith, arrested him, handcuffed him, and took him into custody, charging him with Driving Under the Influence.  Smith spent the night in jail.  These charges were also later dismissed.

Carter and Chris Smith allege that Myers and Stacey Smith used their authority as police officers without probable cause to abuse, harass, detain, and arrest them, to physically assault Carter with excessive force, in accordance with the City's alleged practice of arresting individuals without probable cause when they fail to do what the officers unconstitutionally demand.  Carter sues for false arrest, assault and battery, malicious prosecution and false imprisonment against all defendants; Chris Smith sues for assault and battery, false imprisonment, and malicious prosecution against Myers and conspiracy against Myers and Stacey Smith.  They charge the City with a "systemic practice and failure to train" and allege that the City knew of the violent manner in which Myers treated citizens of Harris County and that he used excessive force, as evidenced by his subsequent prosecution and plea agreement to never against serve as a law enforcement officer.  They further allege

that Defendants, acting in concert, intended to commit the torts to harm Carter and Chris Smith and caused Plaintiffs emotional and physical injuries.

Carter and Chris Smith charge The Connection and ACH, through their agent Stacey Smith, with instigating and effecting the assault and battery, unlawful arrest and detention, and malicious prosecution of Carter by misrepresenting material information to the police about Carter and soliciting their and the City's participation.

Finally, Plaintiffs assert that Defendants had a duty to protect Carter from injury, failed to perform that duty, and their failure caused her emotional and physical injury.

## II.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The plaintiff's legal conclusions are not entitled to the same assumption.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."),

*citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5ᵗʰ Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5ᵗʰ Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5ᵗʰ Cir. 2007)("To survive

a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).   "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.   Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949.   The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan*

*Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

### III. Motions to Dismiss

**A.  Defendants' the City, Smith and Myers' Motion to Dismiss (#3)**

Defendants insist that Plaintiffs fail to state a claim to relief that is plausible.

Because it is clear to the Court from Plaintiffs' response to this motion that they are not familiar with the pleading requirements for section 1983 actions and for particular common law causes of action in federal court, and because their Texas state court pleading requirements are different from those in federal court,[2] the Court sets out what is required of them to state a

---

[2] While the petition here fails to meet the heightened federal pleading requirements under *Twombly* and *Iqbal*, the situation is complicated by the fact that

> "Texas follows a 'fair notice' pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial." *Penley v. C.L. Westbrook*, 146 S.W. 3d 220, 232 (Tex. App.--Fort Worth 2004)(citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W. 3d 887, 896 (Tex. 2000)), [*rev'd on other grounds*, 231 S.W. 3d 389 (Tex. 2007)]. "The test of the 'fair notice' pleading requirement is whether an opposing attorney of reasonable competence, with pleadings before him, can ascertain [the] nature and basic issues of controversy and testimony probably relevant." *City of Alamo v. Casas*, 960 S.W. 2d 240, 251 (Tex. App.--Corpus Christi 1997, pet. denied). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader basis his claim." *Auld*, 34 S.W. 3d at 897. A party's pleadings are to be construed liberally in favor of the pleader. *Id.*

*KIW, Inc. v. Zurich American Ins. Co.*, No. Civ. A. H-05-3240, 2005 WL 3434977, *3 (S.D. Tex. Dec. 14, 2005). Thus pleading standards are far more lenient in Texas state court, as summarized in 1 Tex. Prac. Guide Civil Pretrial § 5:39 (Database updated through September 2010):

claim, in response to Defendants' contentions.  Those claims which are not cognizable as a matter of law the Court dismisses with prejudice; for others which may be curable, the Court grants leave to Plaintiffs to file an amended complaint.

## 1. Fourteenth Amendment Claims

First, as a matter of law Plaintiffs fail to state a claim under the Fourteenth Amendment.  Pretrial deprivations of liberty, excessive force, seizure of a free citizen, and arrest without probable cause fall under the Fourth Amendment and its reasonableness standard, and are not cognizable under the Fourteenth Amendment.  *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Cuadra v. Houston I.S.D.*, 626 F.3d 808, 814 (5th Cir. 2010).  The Court

---

A petition is sufficiently pleaded if one can reasonably infer a cause of action or defense from what is specifically stated.  *Boyles v. Kerr*, 855 S.W. 2d 593, 601 (Tex. 1993); *In re Credit Suisse First Boston Mortgage Capital, LLC*, 273 S.W. 3d 843, 850 (Tex. App.--Houston [14th Dist.] 2008, orig. proceeding)(petition can be sufficient if a claim reasonably may be inferred from what is specifically stated, and thus, a petition is not necessarily defective even if the plaintiff has not specifically alleged one of the elements of a claim); *In re P.D.D.*, 256 S.W. 3d 834, 939 (Tex. App.--Texarkana 2008, no pet.); *San Saba Energy, L.P. v. Crawford*, 171 S.W. 3d 323 (Tex. App.--Houston [14th Dist.] 2005, no pet.); *Tull v. Tull*,159 S.W. 3d 758, 762 (Tex. App.-Dallas 2005, no pet) . . . .*Woolam v. Tussing*, 54 S.W. 3d 442. 448 (Tex. App.--Corpus Christi 2001, no pet.)(pleadings will generally be construed as favorably as possible to the pleader; the court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged, and every fact will be supplied that can reasonably be inferred from what is specifically stated) . . . .

therefore dismisses Plaintiffs' claims under the Fourteenth Amendment of the Federal Constitution with prejudice.

## 2. Municipal Liability

Defendants assert that Plaintiffs fail to state a claim against the City under § 1983 and fail to allege facts to support their conclusory allegations against it. The Court agrees and advises Plaintiffs' counsel that Plaintiffs' pleadings fail to satisfy the pleading standards for the following reasons.

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by "a person" acting under color of state law. *Id.*

Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *See also City of Canton v. Harris*, 489 U.S. 378, 392 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue.

-11-

*Monell*, 436 U.S. 658.  A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights.   *Monell*, 436 U.S. at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001).  The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).  When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority." *Okon*, 426 Fed. Appx. at 316,

-12-

*citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008).[3]   Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"   *Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)].   "A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. . . . A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"   *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009).

A plaintiff cannot conclusorily allege a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts.   *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

"Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."   *Fraire v. City of*

---

[3]   In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute.   *Id.*

*Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992); *see also Rivera v. Houston I.S.D.*, 349 F.3d 244, 247 (5th Cir. 2003)("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."), *citing Bd. of Cnty. Comm'rs v. Brown*, 520 US. 397, 403 (1997).  "The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862. "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'"  *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985). If policymakers do not have notice that a source of training is deficient in a specific respect, they "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

There is a rare exception to the requirement that a plaintiff show a custom or policy where a plaintiff's injury is a

"patently obvious" or "highly predictable" result of inadequate training, as when a municipality "arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force," and the municipality's policy makers consciously chose a training program that was inadequate. *Speck v. Wiginton*, _____ Fed. Appx. _____, 2013 WL 1195829, at *2 (5th Cir. Mar. 17, 2015), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985), and *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011). A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.'" *Id., quoting Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). The narrow exception to this rule requires " the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F. 3d 536, 549 (5th Cir. 2010)("[I]n the one case in which we found a single incident sufficient to support municipal liability, there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force.," and *citing Brown v. Bryan County, OK*, 219 F.3d 450, 462 (5th Cir. 2000)("finding deliberate indifference based on the police officer's known 'personal record of recklessness and

questionable judgment,' inexperience, exuberance, and involvement in forcible arrest situations.").[4]   "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. '[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Connick v. Thompson*, 131 S. Ct. 1350, 1363-64 (2011), *citing Canton,* 498 U.S. at 391.   "[T]he lack of any similar violations indicates that a violation could not be the 'highly predictable consequence' of a failure to train." *Id.* at 550, *quoting Thompson v. Connick*, 578 F.3d 293, 299 (5th Cir. 2009), *aff'd in part and rev'd in part*, 578 F.3d 293(2009)(*en banc*), *rev'd*, 131 S. Ct. 1350 (2011), and *Conner*, 209 F.3d at 797 ("holding that if a failure to train was 'so likely to result in the violation of constitutional rights,' the plaintiff

---

[4] The panel continued, 613 F.3d at 549,

On the other hand, we have rejected claims of deliberate indifference even where a municipal employer knew of a particular officer's proclivities for violence or recklessness. *See, e.g., [Davis*, 219 F.3d 382-85 (finding no deliberate indifference even though city was aware that officer fired weapon inappropriately, had a propensity for violence, and had received citizen complaints about the officer); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (1998)(rejecting claim of deliberate indifference even though evidence showed officer was extremely stressed, may have had quick temper, and was aggressive).  This court has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of respondeat superior liability.

'would be able to identify other instances of harm arising from the failure to train.'").[5]

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011). "Usually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.; Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th

---

[5] *See, e.g., Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)("[W]e have held that proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.  The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.")(*citing Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989)("[S]even judges of the Court agreed in general that a single shooting incident by a police officer was insufficient as a matter of law to establish the official policy requisite to municipal liability under § 1983."), *cert. granted in part*, 525 U.S. 1098 (1999), *cert. dism'd*, 526 U.S. 1083 (1999).

Cir. 1959).

To state a claim against a municipality under § 1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by "*inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy. . . . Those types of details, together with any elaboration possible, help to (1) 'satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests,'and (2) 'permits the court to infer more than the mere possibility of misconduct.'" *Flanagan v. City of Dallas, Texas*, No. 3:13-CV-4231-M-BK, 2014 WL 4747952, at *3 (N.D. Tex. Sept. 23, 2014), *citing Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011); *Twombly*, 550 U.S. at 555 n.3; and *Iqbal*, 556 U.S. at 679. For example in *Flanagan*, *id.* at *10, the district court found adequately pleaded a claim of excessive force by the Dallas Police Department ("DPD") against the City of Dallas to survive a Rule 12(b)(6) challenge:

> Plaintiffs have . . . pleaded several facts from which one could make a reasonable inference of a persistent, widespread practice by DPD officers or otherwise using excessive force rising to the level of a custom having the force of official City policy. In particular, Plaintiffs alleged in their amended complaint that (1) the policy of the DPD to shoot first and ask questions later; (2) Councilman Caraway informed the media that

there were training issues within the DPD that had
resulted in the killing of an unarmed individual; (3)
Dallas is at the top of the list of police misconduct
statistics in the South along with several other Texas
cities; (4) Dallas is ranked number 11 in police
misconduct incidents; (5) the total number of officer-
involved shootings was 144; (6) 86 grand juries have been
convened to investigate police misconduct (although only
two indictments have been returned); (7) 60 unarmed
African-American men have been killed by DPD officers
over the past 13 years; (8) at least 12 other shootings
of unarmed individuals by DPD officers took place during
the year of Allen's death (Plaintiffs describe the
derails of three of the shootings, all of which occurred
after the incident involving Allen [and pointing out
similarities to allegations regarding Allen's shooting in
that the individuals involved were not provoking or
resisting the police when they were shot]); and (9) there
are 94 open DPD internal affairs investigation into
officer-involved shootings.

The district court further noted, *id.* at *11,

Plaintiffs allege that, on average, more than four
unarmed people have been killed by DPD officers each year
for the past dozen years and that there are nearly 100
open internal investigations into such shootings and have
been nearly as many grand jury proceedings.  While it is
a close call, taking all of their allegations to be true,
Plaintiffs have pled sufficient facts, at the motion to
dismiss stage, from which one could make a reasonable
inference of a persistent, widespread practice by DPD
officers of using excessive force rising to the level of
a custom having the force of official City policy.

*Id.[6], citing Oporto v. City of El Paso,* No. 10-CV-110-KC, 2010 WL

---

[6]  In *Flanagan*, 2014 WL 4747952 at *13, the district court
found the following allegations *inter alia* sufficient to plead
that the City of Dallas failed "to provide proper training in the
use of deadly force amounts to deliberate indifference to the
rights of a person with whom the police come into contact":

(1) a witness stated that Allen was unarmed and
complying with Officer Staller's instructions before
Officer Staller shot him repeatedly; (2) at least 12
other shootings of unarmed individuals by DPD officers

3503457, at *6 (W.D. Tex. 2010), and *Rivera v. City of San Antonio*,
No. SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. 2006).

"In limited circumstances, a local government's decision not
to train certain employees about their legal duty to avoid violating
citizens' rights may rise to the level of an official government
policy for purposes of § 1983.  A municipality's culpability for a
deprivation of rights is at its most tenuous where a claim turns on
a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359
(2011), *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23
(1985)("[A] 'policy of 'inadequate training'' is 'far more nebulous,
and a good deal further removed from the constitutional violation,
than was the policy in *Monell*).  To prevail on a failure to train
police officers, the plaintiff must show "(1) that the
municipality's training procedures were inadequate, (2) that the
municipality was deliberately indifferent in adopting its training
policy, and (3) that the inadequate training policy directly caused
the violations in question." *Zarnow*, 614 F.3d at 170, *citing World
Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747,
756 (5th Cir. 2009).  To impose liability on a municipality based on

---

took place during the year Allen died, and over 60
unarmed African-American men have been killed by DPD
officers since 2001; (3) although Officer Staller had
been the subject of several complaints, at least two of
which involved inappropriate use of force, he was still
permitted to carry a firearm; and (4) both Councilman
Caraway and Chief Brown acknowledged the need for
further DPD training.

inadequate training, the plaintiff must "allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287. 293 (5th Cir. 2005).  To prove deliberate indifference in a failure to train case  under § 1983, a plaintiff must show that the failure to train was equivalent to "a deliberate or conscious choice to endanger constitutional rights." *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998).[7]  For the single-instance exception to the requirement of a custom or pattern of similar violations, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

To show that a municipality's failure to train was the "moving force" that caused the constitutional injury requires "a heightened standard of causation": "the plaintiff must establish a 'direct

---

[7] In *Flanagan*, 2014 WL 4747952 at *12, the district court found that Plaintiffs adequately pleaded deliberate indifference in factual allegations to support their claim that the police chief, as the City's final policymaker, "adopted or maintained the policy of police use of excessive force with deliberate indifference to its known or obvious consequences" and "was at fault for Allen's death":  "(1) Officer Staller's lack of information regarding Allen's description and the fact that he was unarmed; (2) Officer Staller's firing of ten bullets at Allen, seven of which struck him, and then attempting to reload his gun; (3) the shooting of 12 other unarmed individuals by DPD members in 2013; (4) the deaths of over 60 unarmed African-American men at the hands of DPD officer since 2001; and (5) the 94 open internal affairs investigations relating to officer involved shootings."

link' between the municipal policy and the constitutional injury,"
i.e., a connection "more than a mere 'but for' coupling between
cause and effect"; "[t]he deficiency in training must be the actual
cause of the constitutional violation." *Valle v. City of Houston*,
613 F.3d 536, 546 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2094
(2011), *citing City of* Canton, 489 U.S. at 391-92; *Brown v. Bryan
County, OK*, 219 F.3d 450, 461 (5th Cir. 2000), *cert. denied*, 532
U.S. 1007 (2001); *Board of County Com'rs of Bryan County, OK v.
Brown*, 520 U.S. 397, 404 (1997); and *Thompson v. Connick*, 578 F.3d
293, 300 (5th Cir. 2009).

"A municipality may be liable for the failure of a policymaker
to take precautions to prevent harm, provided that the omission is
an intentional choice and not merely a negligent oversight.
Negligent training will not support a § 1983 claim a against a
municipality, nor is it sufficient to show that 'injury or accident
could have been avoided if an officer had better or more training.'"
*Boston v. Harris County, Texas*, No. Civ. A. H-11-1566, 2014 WL
1275921, at *90 (S.D. Tex. Mar. 26, 2014), *citing City of Canton*,
489 U.S. at 390. A "city's 'policy of inaction' in light of notice
that its program will cause a constitutional violation 'is the
functional equivalent of a decision by the city itself to violate
the Constitution.'" *Connick v. Thompson*, 131 S. Ct. 1350, 1360
(2011, *citing Canton*, 489 U.S. at 395.

The real party in interest in a suit against a person in his

official capacity is the governmental entity and not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'"), *citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978). Thus suit against individual Defendants Myers and Stacey Smith in their official capacities is a suit against the City and must be pleaded as such.

**3. Qualified Immunity**

Myers and Stacey Smith assert they are entitled to qualified immunity in their individual capacities, and that Plaintiffs have failed to plead specific facts to overcome that qualified immunity. Defendants argue that the allegations against them (i.e., that while officers where investigating the smell of marijuana in Carter's apartment, Myers accused Carter of resisting arrest; Chris Smith alleges Myers falsely arrested him for drunk driving, but makes no allegations against Stacey Smith other than that she divorced him) do not state a claim against Myers or overcome Stacey Smith's qualified immunity.

Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their personal capacity, while performing discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ____, 129 S. Ct. 808, 815 (2009).  Thus the Court examines whether the "officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808.  A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions.").  To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350, *quoting Anderson*, 483 U.S. at 640.  "Where no controlling authority specifically prohibits

-24-

a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012).  Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law."  *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).  The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions

were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when defendant-official raises a qualified immunity defense in his individual capacity, a heightened pleading standard must be met by Plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense. In *Schultea v. Wood*, 47 F.3d 1427, 1429-34 (5th Cir. 1995)(*en banc*), discussing development of qualified immunity defense and pleading rules, the Fifth Circuit further opined, "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." In *Morgan v. Hubert*, 335 Fed. Appx. 466, 472-73 (5th Cir. 2009), the Fifth Circuit reviewed *Schultea*'s standard (requiring plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's contact at the time of the alleged acts"). The panel pointed to the reasoning in *Schultea* in

requiring a heightened pleading standard in the face of a defendant's assertion of qualified immunity:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions. Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants* [emphasis added by *Morgan* panel]." "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

*Morgan*, 335 Fed. Appx. at 469-70, *citing Schultea*, 47 F.3d at 1432-34.

A denial of qualified immunity at the motion to dismiss stage, to the extent that it turns on a matter of law, is an appealable final decision under 28 U.S.C. § 1291 because qualified immunity is immunity from suit and, necessarily, shields the official from the burdens of discovery. *Ashcroft v. Iqbal*, 129 S. Ct. at 1946.; *Porter v. Valdez*, 424 Fed. App'x 382, 385 (5th Cir. 2011), *citing Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, *4 (5th Cir. Jan. 17, 2002)("Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost.").

Thus in their amended complaint, Plaintiffs must address and plead facts to rebut Defendants' qualified immunity defense.

**4. Immunity Under Texas Law**

-27-

**a.  Governmental Immunity to Texas Common Law Claims**

The State of Texas[8] has sovereign immunity and its municipalities and political subdivisions have governmental immunity from claims for damages except where the Legislature waived that immunity in the Texas Tort Claims Act ("TTCA").  *Humphreys v. City of Ganado, Texas*, 467 Fed. Appx. 252, 256 (5th Cir. Mar. 26, 2012), *citing* Tex. Civ. Prac. & Rem. Code § 101.021, and *Reata Constr. Corp. v. City of Dallas*, 197 S.W. 3d 371, 374-76 (Tex. 2006).  The Texas Legislature's limited waiver of immunity is for tort claims arising out of the use of publicly owned automobiles, for premises defects, and for injuries arising out of conditions or use of

---

[8] Neither a State nor its officials acting in their official capacities are "persons" under § 1983.  *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991).  This is true even if the § 1983 action is brought in state court.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Furthermore in the absence of a waiver by the State, the Eleventh Amendment of the United States Constitution bars suits for damages in federal court by a citizen of a state against his own state or against a state agency or department.  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  It also bars suits against state officials when "the state is the real, substantial party in interest," i.e., when a decision in the case would function against the sovereign state, impacting the public treasury, interfering with public administration, or compelling the state to act or refrain from acting.  *Id.* at 101; *Ford Motor Company v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945), *overruled on other grounds, Lapides v. Bd. of Regents of Univ. System of Georgia*, 535 U.S. 613 (2002)(state's own removal of a suit to federal court constitutes a waiver of its Eleventh Amendment immunity); *Kentucky v. Graham*, 473 U.S. 159, (1985)(("[A] judgment against a public servant in his official capacity imposes liability on the entity he represents . . . ."), *quoting Brandon v. Holt*, 469 U.S. 464, 471 (1985).

property and premises defects.  Tex. Civ. Prac. & Rem. Code §
101.021.  It does not waive immunity for intentional torts, such as
assault and battery, malicious prosecution, false arrest.  Tex. Civ.
Prac. & Rem. Code § 101.057 (expressly excludes waiver for a claim
"arising out of assault, battery, false imprisonment, or any other
intentional tort."). *See, e.g., Muhammad v. Newell*, 3-08-CV-1426-
BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009)(limited waiver
of TTCA "does not extend to claims 'arising out of assault, battery,
false imprisonment, or any other intentional tort"); *Chalmers*, 2014
WL 1778946, at *4 (false imprisonment).

Defendants contend that because Carter and Chris Smith assert
only intentional state tort claims against the City and because
Plaintiffs fail to show that any injury they sustained was caused
by any condition or use of tangible property or publicly owned
automobiles, their tort claims for damages against the City and
against the Officers in their official capacities are barred.  The
Court agrees.

Furthermore, Defendants assert, "A rose is a rose and an
intentional tort is an intentional tort so Plaintiffs cannot
circumvent the operative provisions of the Tort Claims Act by
seeking to mischaracterize an intentional tort as mere negligence."
#3 at p. 10, *citing Morgan v. City of Alvin*, 175 S.W. 3d 408, 418-19
(Tex. App.--Houston [1st Dist.] 2004, no pet.)("[T]he conduct
appellant complains of as negligence is the same conduct that forms
the basis of his assault claim . . . . Thus, appellant's negligence

-29-

claim . . . is in essence an intentional tort claim and does not fall within the Tort Claims Act's waiver of government immunity."), and *Cameron County v. Ortega*, 291 S.W. 3d 495, 498-99 (Tex. App.--Corpus Christi 2009, no pet.)("Texas law states that, even if a claim is framed in negligence, when the facts pleaded amount to an intentional tort, the claim does not cause a waiver of sovereign immunity under the TTCA. . . . . In other words, a plaintiff cannot circumvent the intentional nature of his claim by calling the action negligent. [citations omitted]").  Here, too, the Court agrees that the negligence claim here is based on the same conduct as the intentional tort claims and that Plaintiffs cannot assert it because it is a futile attempt to circumvent those intentional tort claims which are not waived by the TTCA.

Moreover, under the TTCA, which "covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity," "'[i]f suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'"  Tex. Civ. Prac. & Rem. Code § 101.106(e);*Gil Ramirez Group, LLC v. Houston I.S.D.*, ___ F.3d___, 2015 WL 2383797, at *11 (5th Cir. May 18, 2015), *citing Mission Consol. I.S.D. v. Garcia*, 253 S.W. 3d 653, 658 (Tex. 2008)(interpreting § 101.106(e) to cover all tort claims, including those for which immunity was waived by the TTCA).  *See also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (Tex. 2010)(any state common law tort claim brought against a governmental unit and its employees, including intentional

torts, will allow the employee defendants to be dismissed if the governmental unit moves to do so). Here the City, Stacey Smith, and Myers assert that Plaintiffs' claims against Stacey Smith and Meyers in their individual capacities are statutorily barred by § 101.106(e) because under § 101.106(a), "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." The same is true under Tex. Civ. Prac. & Rem. Code § 101.106(f) [9] if the employees have been sued in their official capacity *Morales v. City of Sugar Land*, No. Civ. A. H-13-3575, 2015 WL 162203, at *7 (S.D. Tex. Apr. 9, 2015), *citing Stinson v. Fontenot*, 435 S.W. 3d 793, 794 (Tex. 2014)(*per curiam*).[10]

---

[9] Section 101.106(f) provides,

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be one against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the government unit as defendant on or before the 30th day after the date the motion is filed.

[10] The Court would point out that when an employee acts *ultra vires*, i.e., outside the scope of his authority, the suit is against him in his individual capacity, but section 101.106's election of remedies provision still applies. *Molina v. Alvarado*, ___ S.W. 3d ___, No. 14-0536, 2015 WL 2148055, at *2 (Tex. May 8, 2015). If a plaintiff at the time he files suit

Therefore, because the City of Huntsville has so requested, the Court dismisses with prejudice all the tort claims for damages under Texas law (false arrest, assault and battery, malicious prosecution, false imprisonment, negligence, and conspiracy) asserted against Stacey Smith and Myers in their individual capacities pursuant to § 101.106(e).

**b.  Official Immunity to Texas Common Law Claims**

The official immunity defense under Texas law is "substantially the same" as that of federal qualified immunity.  *Crostley v. Lamar County, Texas*, 717 F.3d 410, 424 (5th Cir. 2013).  Under the affirmative defense of official immunity, a government employee may be immune from a suit that arises from (1) his performance of discretionary duties (2) in good faith, (3) if he was acting in the course and scope of his authority.   *City of Brazoria, Texas v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *4 (Tex. App.--Houston [14[th] Dist.] May 28, 2015), *citing City of Pasadena v. Belle*, 297 S.W. 3d 525, 530 (Tex. App.--Houston [14[th] Dist.] 2009), and *Green v. Alford*, 274 S.W. 3d 5, 16 n.11 (Tex. App.--Houston [14[th] Dist. 2008, pet. denied).  Under this defense, good faith is "a standard of objective legal reasonableness that disregards the police officer's subjective state of mind."  *Id., citing Belle*, 297

does not have sufficient information to determine whether the governmental unit's employee is acting within the scope of his employment, "the prudent choice" is to sue the employee and "await a factual resolution of that question"; if instead he sues both "before being required to do so by the election-of-remedies provision . . . [t]hat choice is still an irrevocable election under section 101.106."  *Id.* at *3.

S.W. 3d at 530.

The burden of proof is first on the officers to show they are entitled to official immunity from Plaintiffs' claims. *Id., citing id.* Defendants bear the burden to prove conclusively that "a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information that he possessed at the time." *Id., citing id.* Requiring a balancing test, good faith is judged on how a reasonably prudent officer could have assessed the need, i.e., the urgency of the circumstances requiring police intervention, to which an officer responds and the officer's course of action, based on his perception of the facts at the time of the event. *Id., citing Wadewitz v. Montgomery*, 915 S.W. 2d 464, 467 (Tex. 1997). Then in order to rebut such a showing by Defendants, Plaintiffs must then demonstrate that "no reasonable person in the officer's position could have thought the facts were such that they justified the officer's actions." *Id., citing id.* The Texas Supreme Court opined in *Wadewitz* at 467, for rebuttal and to raise a genuine issue of material fact for trial, a party must address the following need/risk factors:

> In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The 'risk' aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the

possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

Defendants here have not yet filed an Answer and have thus not pleaded the affirmative defense of official immunity.[11]  From the submissions currently in the record the Court observes that if they do, and if they meet their burden to show they are entitled to official immunity, possible issues here are whether Stacey Smith was acting in the course and scope of her authority as a police officer and whether both or either officer was acting in good faith.

**5.  Texas Constitution**

Plaintiffs' Original Petition states they are seeking damages for violations of the Texas Constitution.  Not only have they failed to identify the provisions they claim have been violated, but there is no Texas law equivalent to § 1983, and the Texas Constitution does not create an implied private right of action for money damages.  *City of Beaumont v. Bouillion*, 896 S.W. 2d 143, 147 (Tex. 1995).[12]  Historically and currently Texas common law has not and

---

[11] Although the City, Stacey Smith and Myers have filed a motion for leave to file first amended answer (#25), which claims that in state court they filed an answer summarily denying all claims in the Original Petition, that answer was not included in the removal papers, and the Court does not know what affirmative defenses it might have raised.

[12] Sovereign immunity does not shield a governmental entity from suit for equitable relief for a violation of constitutional rights.  *Bouillion*, 896 S.W. 2d at 149; *see City of Elsa v. M.A.L.*, 226 S.W. 3d 390, 392 (Tex. 2007)(suits for injunctive relief may be maintained against governmental entities); *Harris County Hosp. Dist. v. Tomball Regional Hosp.*, 283 S.W. 3d 838, 849 (Tex, 2009)(*citing Harris County Hosp. Dist.*).  Plaintiffs'

does not provide a cause of action for damages for the violation of constitutional rights. *Id.* at p. 150. *See also Alcorn v. Vaksman*, 877 S.W. 2d 390, 404 (Tex. App.--Houston [1 st Dist.] 1994, writ denied)(*en banc*)(holding university officials are immune in their official capacities for monetary claims based on violations of the Texas Constitution).

**B.  Defendants The Connection and ACH's Motion to Dismiss (#5)**

Asserting that the two incidents alleged in this suit occurred five days apart and have nothing factually in common other than that they occurred in the City and allegedly involved Myers and Stacey Smith, The Connection and ACH argue that Stacey Smith does not appear to assert any claims against them and Carter seeks monetary damages based on alleged violations of § 1983 and Texas tort law.

The Connection and ACH move to dismiss the § 1983 claims on the ground that they are private corporations, not state actors, and they do not act under the color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929-30 (1982).  To impose liability under the statute on a private corporation, the corporation must jointly participate in the conduct actionable under § 1983.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 330 n.28 (1993)(If private parties jointly participated with officials action under color of state law in the challenged conduct, they would be liable under § 1983)(*citing Lugar*, 457 U.S. at 931; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 152 (1970)(holding that a private party's

---

Original Petition, however, clearly seeks only monetary damages.

joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and an action "under color of law for purposes of" § 1983)("To act 'under color of law" does not require that the [defendant] be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.").[13]

The fact that Stacy Smith was allegedly a "resident security officer" for the Connection cannot impose liability on The Connection because a private corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. *See also Goodzari v. Hartzog*, 2014 WL 722109, at *6 (S.D. Tex. 2014)(("Goodzari's respondeat superior claim must be dismissed because . . . Memorial Health System is not vicariously responsible

---

[13] This Court notes that in *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004), the Fifth Circuit opined,

> For a private citizen . . . to be liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors. *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989). This court has held that a non-state actor may be liable under 1983 if the private citizen was a "willful participant in joint activity with the State or its agents." [*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).] The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Id.* Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Brinkmann v. Johnston*, 793 F.3d

for the actions of either Officer Gonzalez or individual Memorial Hermann Hospital Defendants"; "a respondeat superior claim against Gonzalez is not cognizable under § 1983.")

Furthermore in the context of an arrest the Fifth Circuit requires that the police must have acted "according to a preconceived plan and on the say-so of the private actor, not on the basis of their own investigation." *Bartholomew v. Lee*, 889 F. 2d 62, 62 (5th Cir. 1989). *See also Simms v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 (5th Cir. 1985)(where plaintiff claims a private party acted under color of law as part of a conspiracy to effect an unlawful arrest, the plaintiff must demonstrate that "the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party."). Defendants contend that Plaintiffs here have failed to do so, but have merely speculated that there was a conspiracy.

As for the state law tort claims (false arrest, false imprisonment, assault, battery, and malicious prosecution), under Texas law to establish a cause of action involving injury by an off-duty, privately employed police officer, the police officer must be performing a private duty, such as protecting an employer's property, ejecting trespassers, or enforcing the employer's rules, to impose vicarious liability on The Connection. *Ogg v. Dillard's, Inc.*, 239 S.W. 3d 409, 418 (Tex. App.--Dallas 2007, pet. denied). When a police officer is enforcing general laws, his private employer has no vicarious liability for his acts even if the

employer directed the actions. *Id.* (and cases cited therein). Plaintiffs do not plead any facts showing Stacey Smith was performing a private duty at the time of the alleged incident.

Last of all, The Connection and ACH urge, Plaintiffs must show that the private defendant initiated or procured the prosecution. *Kroger Texas, LP v. Suberu*, 216 S.W. 3d 788, 792 & n.3 (Tex. 2006). The private party must be the cause-in-fact of the prosecution and not merely the aiding or abetting of law enforcement in bringing it about. *Browning-Ferris Indus. v. Lieck*, 881 S.W. 2d 288, 293 (Tex. 1994)("In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must . . . appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.")(citing Restatement (Second) of Torts § 653, cmt. g (1977)); *in accord, King v. Graham*, 126 S.W. 3d 75, 76 (Tex. 2003)(*per curiam*).

Only Carter filed a response to this motion, which the Court finds to be conclusory and factually deficient. In it (#9 at p. 2), Carter summarily asserts that The Connection and ACH "in a common course of action, jointly (conspiracy), intentionally and knowingly performed the illegal arrest of Plaintiff Carter for arbitrary and personally motivated reasons."  The same is true of her allegations that "Stacey Smith, in her capacity as agent for the Connection, acted jointly and in concert with Defendant Chris Myers in the

deprivation of" Carter's constitutional rights and "instituted and effected the unlawful arrest and detention by misrepresenting material information to the police regarding" Carter. *Id.* at p. 3. While insisting Myers "had a pattern of abuse," and that Stacey Smith "had a history of collaborating with Myers in abusing police power," Carter fails to identify any specific examples. *Id.* at pp. 2, 4. Indeed Carter's response is replete with such boiler plate and broad statements, unsupported by facts or by Plaintiffs' bare-bones allegations in their Original Petition, which, after all, is the focal point of Rule 12(b)(6).

In their reply (#11), The Connection and ACH state they were never served with a copy of Carter's response. They also highlight the disparity between allegations in Carter's response and their absence in the Original Petition. The Court agrees that the many specific pleading deficiencies identified by The Connection and ACH need repleading to state a claim. The Court emphasizes that the only mention of ACH in the Original Petition is it is "the management company operating The Connection [#1-1 at p. 2, ¶ 4]," but Plaintiffs fail to plead any facts or cite any authority that would impose liability on ACH for that reason. Moreover because Plaintiffs' pleadings in their Original Petition against both The Connection and ACH are so "bare bones," the Court cannot tell whether Plaintiffs have cognizable claims against them. Therefore the Court will permit Plaintiffs to file an amended complaint to attempt to state viable claims against these two entities.

**ORDER**

Accordingly, for the reasons stated above, the Court

ORDERS that Defendants the City, Stacey Smith, and Myers'
motion to dismiss (#3) is GRANTED IN PART and the following claims
are DISMISSED with prejudice: (1) Plaintiffs' claims against all
Defendants under § 1983 and the Fourteenth Amendment; (2)
Plaintiffs' tort claims under Texas common law (false arrest,
assault and battery, malicious prosecution, false imprisonment,
negligence, and conspiracy) against Stacey Smith and Myers pursuant
to Tex. Civ. Prac. & Rem. Code § 101.106(e); (3) Plaintiffs' tort
claims against the City under   Tex. Civ. Prac. & Rem. Code §
101.057; and (4) Plaintiffs' claims for damages for violations of
the Texas Constitution.  The Court further

ORDERS that Defendants the City, Stacey Smith, and Myers'
motion to dismiss (#3) is otherwise DENIED, and Plaintiffs are
granted leave to file a amended complaint within twenty days of
entry of this Opinion and Order to attempt to state cognizable
claims against Movants under § 1983 and the Fourth Amendment, with
specific facts supporting the pleading requirements for each.
Conclusory, general allegations do not satisfy Rule 12(b)(6).

The Court further

ORDERS that The Connection and ACH's motion to dismiss (#5) is
also DENIED, with leave again granted to Plaintiffs to file an
amended complaint that meets pleading requirements for claims
against them.

Failure  to  file  adequate  pleadings  and  pleadings  with

sufficient facts to state cognizable claims against all Defendants will result in dismissal of those claims failing to satisfy Rule 12(b)(6) and the elements of each cause of action.

    **SIGNED** at Houston, Texas, this $\underline{10^{th}}$ day of June, 2015.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE