United States District Court
Southern District of Texas

**ENTERED**

March 30, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MELISA CARTER and CHRIS SMITH, §
                                §
                Plaintiffs,     §
                                §
VS.                             §    Civ. A. H-14-2776
                                §
DIAMOND URS HUNTSVILLE, LLC,    §
ASSET CAMPUS HOUSING, INC.,     §
THE CITY OF HUNTSVILLE, TEXAS,  §
OFFICER STACEY SMITH-GALLAR,    §
and OFFICER CHRISTOPHER MYERS,  §
                                §
                Defendants.     §

### OPINION AND ORDER

Pending before the Court in the above referenced cause, grounded in 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution and alleging excessive force and unreasonable search and seizure, in addition to assault and battery and false imprisonment under Texas common law[1] against

---

[1] Arguing that the Court wrongly construed and dismissed their tort claims under the Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.001, *et seq.*, in its previous Opinion and Order (#28), Plaintiffs state that they are not suing under the statute, but under Texas common law.  Moreover, because Plaintiffs allege Smith and Myers acted in bad faith, they do not invoke official immunity under the common law claims.  As will be discussed, it is not up to Plaintiffs, but to Defendants to invoke the affirmative defense of immunity by conclusively showing they were performing discretionary duties, within the scope of their employment and that they acted in good faith.  *Telthorster v. Tennell*, 92 S.W. 3d 457, 459-61 (Tex. 2002)"When a suspect sues for injuries sustained during an arrest, official immunity's good faith element requires the defendant to show that a reasonably prudent officer under the same or similar circumstances, could have believed that the disputed conduct was justified based on the information the officer possessed when the conduct occurred.").  Then Plaintiff bear the burden of demonstrating that the defense does not apply by showing because no reasonable officer under similar circumstances could have believed that the facts were such that they justified the disputed conduct.  *Id.* at 460.

Defendants/Officers Stacey Smith and Christopher Myers in their individual capacities only, are the following motions:   (1) Defendants the City of Hunstville, Texas, Officer Stacey Smith, and Officer Christopher Myers' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)(instrument #32); (2) Defendants City of Huntsville, Officer Stacey Smith, and Officer Christopher Myers' opposed motion to sever claims (#22);  and (3) Defendants Diamond URS Huntsville, LLC d/b/a the Connection at Huntsville and Asset Campus Housing Inc.'s motion to join #22 (#24).

As a threshold matter, because Plaintiffs' governing First Amended Complaint (#31) has dropped their earlier claims against Defendants Diamond URS Huntsville, LLC d/b/a the Connection at Huntsville and Asset Campus Housing Inc., the motion to join (#24) is MOOT.

### I.  Defendants' Motion for Severance

The Court addresses the severance issue first.

Federal Rule of Civil Procedure 21 provides,

> Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.

### A.  *Standard of Review*

The district court has broad discretion to sever claims and parties in a lawsuit.  *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).  "Severance under Rule 21 creates two separate actions or suits where previously there was but one.  Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render

-2-

a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neill*, 709 F.2d 361, 368 (5th Cir. 1983).  The Court should examine Fed. R. Civ. P. 20(a) to determine if the parties have been misjoined and should therefore be severed.  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).  Rule 20(a) permits individuals to "join in one action as plaintiffs if (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

The Fifth Circuit has not adopted a particular test to decide what is "the same transaction or occurrence" under Rule 20(a).  *Lodsys, LLC v. Brother Intern. Corp.*, No. 2:11-cv-90-JRG, 2012 WL 760729, at *2 (E.D. Tex. Mar. 8, 2012).  Several of its district courts have used the Eighth Circuit's "logically related" test for the "same transaction" requirement in *Moseley v. GMC*, 497 F.2d 1330, 1332-33 (8th Cir. 1974)("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence"; "as used in Rule 20 [the terms] would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  Absolute identity of all events is unnecessary.")(citing 7 C. Wright, *Federal Practice and Procedure* § 1653 at 270 (1972).  *Id.*  The "common question"

-3-

can be satisfied by the presence of only a single one. *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 148 (N.D. Tex. 2010)("Texas Rule 40 provides that defendants may be joined together in the same action only if (1) 'there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;' and (2) at least one 'question of law or fact common to all of them will arise in the action.'"(*citing inter alia* Tex. R. Civ. P. 40(a), and 7 *C. Wright, A. Miller, & M. Kane,* Federal Practice & Procedure § 1653 (3d ed. 2002)).

In *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014), the Fifth Circuit acknowledged that while it has not yet adopted a test for severance, a number of its district courts have applied the five-factor test in *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *1 (N.D. Sept. 26, 2012): "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." "'[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.'" *Id., quoting* Wright & Miller, *Fed. Prac. & Proc.* § 1689 (3d ed. 2004). "'Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with

-4-

fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Acevedo*, 600 F.3d at 521, *quoting United Mine Workers v. Gibbs*, 383 U.S. 714, 724 (1966).

**B.  *Defendants' Argument***

        Defendants urge the Court to sever this action into two lawsuits because, as United States Magistrate Judge Frances Stacey observed in her Order (#19 at pp. 1-2) of March 27, 2015, denying Defendants' motion to disqualify, "This is a civil rights case involving claims that two police officers with the City of Huntsville Police Department (Stacey Smith and Christopher Myers) used excessive force against two unrelated Plaintiffs--Melisa Carter and Chris Smith--in two unrelated incidents."  Defendants maintain that Chris Smith had no involvement or any connection with the arrest of Melisa Carter and vice versa.  Furthermore, Chris Smith has not alleged facts and cannot provide any evidence demonstrating that Stacey Smith had any connection with Chris Smith's arrest.  Instead, they argue, it is obvious that Chris Smith is suing his estranged wife, Stacey Smith, in order to gain an advantage in their divorce and child custody litigation.  Thus, insist Defendants, Plaintiffs cannot assert any right to relief jointly or severally against all the Defendants and their claims do not arise out of the same transaction or occurrence.  The claims of the two Plaintiffs do not share any common questions of law or fact.  Even if there were one common question, the Court has the discretion to sever the claims to avoid prejudice and delay, to ensure judicial economy, and to safeguard principles of fundamental fairness at stake here.

The motion also points out that each Defendant here has asserted a defense of qualified immunity and argues that forcing these officers to a trial that includes unrelated claims from unrelated events would deprive them of protections under their immunity defense.  Claims about the bad acts of either defendant would be irrelevant to the objective analysis required for their qualified immunity defense and would unfairly prejudice and deprive them of that defense's protection and inadmissible character evidence under Federal Rules of Evidence 403, 404, and 608.  *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 994 (5th Cir. 1994)("in allowing limited discovery on the issue of qualified immunity would deny [party] the benefit of [its] qualified immunity defense, the most relevant being the protection from pretrial discovery"), *citing Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)("'A defendant entitled to claim qualified immunity is shielded not only from liability, but also from 'the costs of trial [and] . . . the burdens of broad-reaching discovery.'"), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982).

## C.  *Plaintiffs' Response*

In response (#26) Plaintiffs claim that the two officers' continuous course of conduct, i.e., the ongoing use of excessive force and unlawful arrest by Officer Stacey Smith-Gellar ("Officer Stacey Smith") and Officer Christopher Myers ("Officer Myers" or "Myers") supports an essential element of their § 1983 claim against the City of Huntsville, i.e., a custom or policy of

allowing its officers to violate civil rights.[2]  Thus there is a common question of law and fact here relating to qualified immunity as well as to the training, hiring and retention of these officers, and the grounds for Myers' termination.[3]  These same two officers used excessive force and performed two illegal arrests within a week of each other, both for personal reasons and by virtue of being officers of the Huntsville Police Department, acting under color of state law.  Plaintiffs claim that the two

---

[2] Generally municipalities or local government units are not liable for the constitutional torts of their employees unless those employees act pursuant to an official action or with official approval.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 663 n.7 (1978).  To state a claim for municipal liability under Section 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" (the causal link), is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, (5th Cir. 2001), *citing Monell*, 436 U.S. at 694.  A policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"  *Id., citing id.*

[3] According to the First Amended Complaint, #31, ¶ 3.23,

> Myers was investigated for his several acts of police misconduct, and was indicted by the Grand Jury for Felony Oppression for the incident preceding the two at issue here. Myers eventually entered a plea agreement in which he agreed to never work in law enforcement again.  The charges against both Carter and Plaintiff Smith were dismissed quietly.

Paragraph 3.25 states, "Carter never received a response to her complaint that appears to have been ignored once Myers was indicted for the previous act of felony Official Oppression."

separate but closely related incidents were part of the same "series of transactions."

## D.  Court's Decision

The Court finds that the motion to sever should be denied.  In their allegations against the three Defendants, Plaintiffs have joined claims against the two officers and the City of Huntsville in part to meet (1) the requirement of a policy or custom to impose liability on the City under § 1983; (2) the requirement that policy makers actually or constructively knew of the unconstitutional deficiencies in those policies or customs, which were highly predictable; and (3) the requirement that the customs or policies were the moving force behind the constitutional violation of Plaintiffs' rights and adopted with deliberate indifference to the rights of the citizens.

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993), the Supreme Court rejected any heightened pleading standard for section 1983 claims against municipalities and instead applied Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing the pleader is entitled to relief."  Plaintiffs' First Amended Complaint (#31) alleges that "Myers had a history and pattern of abusing his office and power and was removed from the police force for excessive force and abuse of a detainee." *Id.*, ¶ 3.1.  It continues, ¶ 3.2,

> Prior to the incidents at issue here, Myers
> while on duty and on patrol, assaulted a
> citizen he had stopped and, among other bad
> acts and physical assaults, shoved the
> detainee's face into the truck lid of his

>vehicle in the heat of the summer and held it
>there until the victim was severely burned by
>the hot metal.   This felony conduct was
>recorded on Myers' patrol car camera and
>viewed by his superiors shortly thereafter.
>An investigation ensued, but Myer's [*sic*] was
>not suspended or disciplined, and was, in
>fact, allowed to continue as a patrolman.
>The Chief of Police and the City Manager of
>Huntsville were both aware of Myers' bad acts
>and the Chief viewed the video of Myers'
>assault.

The First Amended Complaint, ¶3.11-3.14 describes in detail the

alleged violence with which Myers treated Plaintiff Carter in

stopping her and arresting her in her own apartment, purportedly

without probable cause.  It also alleges facts of his intimidation

in his unlawful stop and arrest of Plaintiff Chris Smith after he

had already been questioned and released by other officers

following an automobile accident.  ¶ 3.18-3.21, 3.24.  The claims

against Defendant Officer Stacey Smith allege that she conspired

with Myers and participated in an action with him to "get"

Plaintiffs Chris Smith and Carter.

The joinder of the claims against the two officers is

relevant to the common legal question of a custom or policy for

imposition of liability on the City of Huntsville for the alleged

unconstitutional violations of Plaintiffs' rights.  *See, e.g.,*

*Battison v. City of Electra*, No. 7:01-CV-037-R, 2001 WL 497769, at

*2(N.D. Tex. May 8, 2001)(In a § 1983 suit alleging that the City

of Electra engaged in a pattern or practice of violating the

constitutional rights of its citizens by engaging in negligent

hiring, supervision and retention, the court opined, "Where a

claim is based on a pattern or practice of conduct, such conduct

can constitute the 'series of transactions or occurrences' required by Rule 20(a)."). The second prong of Rule 20(a) is met because both Plaintiffs allege the same constitutional violation of false arrest. Because of these common questions of law and fact, judicial economy would be served by trying these claims together. The joinder of these parties and claims therefore does not prolong the litigation nor unnecessarily increase its costs. Plaintiffs have shown why the claims should not be severed and accordingly the Court denies Defendants' motion to sever. *See also, e.g., King v. Ralston Purina Co.*, 97 F.R.D. 477, 480 (D.N.C. 1983)("Common sense says that claims alleged to be part of a 'pattern or practice' satisfy both the 'transaction' and the 'common question' requisites of Rule 20(a).").

Whether Plaintiffs have succeeded in stating a claim upon which relief may be granted, however, is a separate issue from severance and is raised by Defendants' motion to dismiss under Rule 12(b)(6).

## II. Defendants' Motion to Dismiss (#32)

### A. *Procedural History*

This is the second time Defendants have moved to dismiss Plaintiffs' pleadings. Previously the Court dismissed with prejudice Plaintiffs' claims under the Fourteenth Amendment, the tort claims under Texas Tort Claims Act (false arrest, assault and battery, malicious prosecution, false imprisonment, negligence, and conspiracy) against Officers Smith and Myers and against the City of Huntsville, and their claims for damages for violations of the Texas Constitution, but otherwise denied the motion. #28. It

granted leave to Plaintiffs to file an amended pleading with viable claims under § 1983 and the Fourth Amendment. Thus the First Amended Complaint is Plaintiffs' "second bite of the apple."

### B.  *Standard of Review*

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . .

. a statement of facts that merely creates a suspicion [of] a
legally cognizable right of action"). "*Twombly* jettisoned the
minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S.
41 . . . (1957)["a complaint should not be dismissed for failure
to state a claim unless it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim which would
entitle him to relief"], and instead required that a complaint
allege enough facts to state a claim that is plausible on its
face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir.
2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191,
205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss,
the plaintiff must plead 'enough facts to state a claim to relief
that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at
1974). "'A claim has facial plausibility when the pleaded factual
content allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.'" *Montoya v.
FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir.
2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The
plausibility standard is not akin to a "probability requirement,"
but asks for more than a "possibility that a defendant has acted
unlawfully." *Twombly*, 550 U.S. at 556.  Dismissal is appropriate
when the plaintiff fails to allege "'enough facts to state a claim
to relief that is plausible on its face'" and therefore fails to
"'raise a right to relief above the speculative level.'" *Montoya*,
614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

        In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court
stated that "only a complaint that states a plausible claim for

-12-

relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

**C.  Substantive Law**

*1.  42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

*2.  Municipal Liability Under § 1983*

Municipalities and other bodies of local government are "persons" within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). "A municipality cannot be held liable *solely* because it employs a tortfeasor--or, in

-13-

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *See also City of Canton v. Harris*, 489 U.S. 378, 392 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. 658. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690-91. To avoid respondeat superior liability and to impose liability on the City, the plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the City's degree of culpability ("deliberate indifference" to the known or obvious consequences of the City's unconstitutional policy). *Bryan County v. Brown*, 520 U.S. 397, 415 (1997).

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policy maker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or custom, i.e., the deprivation of plaintiff's constitutional rights was inflicted pursuant to that official custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation)(*citing Monell*, 436 U.S. at 694), *cert. denied*, 534 U.S. 820 (2001). The Fifth Circuit has defined an official policy for

purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. Appx. 312, 316 (5th Cir. May 23, 2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985). When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority." *Okon*, 426 Fed. Appx. at 316, *citing Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008).[4]

Alternatively, a policy may be "'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id., citing id.*, and *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)("A pattern of conduct is necessary only when the municipal actors are *not* policymakers")[, *cert. denied*, 131 S. Ct. 3059 (2011)]. "A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. . . . A pattern also requires 'sufficiently numerous prior incidents,' as opposed

---

[4] In such a case the court must determine which official or government body has final policymaking authority for the local government unit regarding the action in dispute. *Id.*

to 'isolated instances.'" *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009).  "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *Peterson*, 588 F.3d at 850.  "A pattern requires similarity and specificity"; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851, *citing Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).  "A plaintiff cannot conclusorily allege a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), *citing Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

   "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992); *see also Rivera v. Houston I.S.D.*, 349 F.3d 244, 247 (5th Cir. 2003)("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."), *citing Bd. of Cnty. Comm'rs v. Brown*, 520 US. 397, 403 (1997).

"The governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon*, 426 Fed. Appx. at 316, *citing Bennett*, 735 F.2d at 862. "'Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information,'" while "constructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985).

"Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice"; it requires a plaintiff to show that "'in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010)(*quoting City of Canton*, 489 U.S. at 390), *cert. denied*, 131 S. Ct. 2094 (2011). "Usually a plaintiff must show a pattern of similar violations, and in the

case of an excessive force claim . . . the prior act must have involved injury to a third party." *Id.*; *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1959).   "[A] City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens." *Piotrowski*, 237 F.3d at 581.

To state a claim against a municipality under § 1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by "*inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy. . . . Those types of details, together with any elaboration possible, help to (1) 'satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests,'and (2) 'permits the court to infer more than the mere possibility of misconduct.'" *Flanagan v. City of Dallas, Texas*, No. 3:13-CV-4231-M-BK, 2014 WL 4747952, at *3 (N.D. Tex. Sept. 23, 2014), *citing Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011); *Twombly*, 550 U.S. at 555 n.3; and *Iqbal*, 556 U.S. at 679.  For example in *Flanagan*, *id.* at *10, the district court found adequately pleaded a claim of excessive force by the Dallas Police Department ("DPD") against the City of Dallas to survive a Rule 12(b)(6) challenge:

> Plaintiffs have . . . pleaded several facts from which one could make a reasonable inference of a persistent, widespread

practice by DPD officers or otherwise using
excessive force rising to the level of a
custom having the force of official City
policy. In particular, Plaintiffs alleged in
their amended complaint that (1) the policy
of the DPD to shoot first and ask questions
later; (2) Councilman Caraway informed the
media that there were training issues within
the DPD that had resulted in the killing of
an unarmed individual; (3) Dallas is at the
top of the list of police misconduct
statistics in the South along with several
other Texas cities; (4) Dallas is ranked
number 11 in police misconduct incidents; (5)
the total number of officer-involved
shootings was 144; (6) 86 grand juries have
been convened to investigate police
misconduct (although only two indictments
have been returned); (7) 60 unarmed African-
American men have been killed by DPD officers
over the past 13 years; (8) at least 12 other
shootings of unarmed individuals by DPD
officers took place during the year of
Allen's death (Plaintiffs describe the
derails of three of the shootings, all of
which occurred after the incident involving
Allen [and pointing out similarities to
allegations regarding Allen's shooting in
that the individuals involved were not
provoking or resisting the police when they
were shot]); and (9) there are 94 open DPD
internal affairs investigation into officer-
involved shootings.

The district court further noted, *id.* at *11,

Plaintiffs allege that, on average, more than
four unarmed people have been killed by DPD
officers each year for the past dozen years
and that there are nearly 100 open internal
investigations into such shootings and have
been nearly as many grand jury proceedings.
While it is a close call, taking all of their
allegations to be true, Plaintiffs have pled
sufficient facts, at the motion to dismiss
stage, from which one could make a reasonable
inference of a persistent, widespread
practice by DPD officers of using excessive
force rising to the level of a custom having
the force of official City policy.

-19-

*Id.*[5]*, citing Oporto v. City of El Paso,* No. 10-CV-110-KC, 2010 WL 3503457, at *6 (W.D. Tex. 2010), and *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. 2006).

The right to be free from excessive force during a seizure is clearly established. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), *citing Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)(*per curiam*).  To state a claim of excessive force in a seizure under the Fourth Amendment, the plaintiff must demonstrate (1) an injury (2) resulting directly and only from a use of force that was clearly excessive, and (3) that the excessiveness of the force was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  The third prong depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  The court should

---

[5]  In *Flanagan*, 2014 WL 4747952 at *13, the district court found the following allegations *inter alia* sufficient to plead that the City of Dallas failed "to provide proper training in the use of deadly force amounts to deliberate indifference to the rights of a person with whom the police come into contact":

> (1) a witness stated that Allen was unarmed and complying with Officer Staller's instructions before Officer Staller shot him repeatedly; (2) at least 12 other shootings of unarmed individuals by DPD officers took place during the year Allen died, and over 60 unarmed African-American men have been killed by DPD officers since 2001; (3) although Officer Staller had been the subject of several complaints, at least two of which involved inappropriate use of force, he was still permitted to carry a firearm; and (4) both Councilman Caraway and Chief Brown acknowledged the need for further DPD training.

consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The key issue is "whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Poole*, 691 F.3d at 628, *quoting Graham*, 490 U.S. at 397.  The analysis must be objective, and the court must view the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id., citing id*.  The court must balance the amount of force used against the need for that force and consider that police officers are often forced to make split-second judgment in situations that are tense, uncertain, and rapidly evolving.  *Graham*, 490 U.S. at 396.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officers's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.

It is clearly established Fourth Amendment law that an arrest must be based on probable cause, which "exists when 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caustion, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015), *citing Club Retro, LLC v. Hilton*, 568

F.3d 181, 206, 204 (5ᵗʰ Cir. 2009).  "[R]easonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment." *Id.*  To allege a section 1983 claim, the plaintiff must show that the defendant did not have probable cause to arrest the plaintiff.  *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5ᵗʰ Cir. 2004)

The real party in interest in a suit against a person in his official capacity is the governmental entity and not the named official.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  *See also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'"), *citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978).  Thus suit against individual Defendants Myers and Stacey Smith in their official capacities is a suit against the City and must be pleaded as such.

*3. Excessive Force*

To prevail on a § 1983 excessive force claim in violation of the Fourth Amendment, a plaintiff must show (1) that he was seized,[6] (2) that he suffered an injury, (3) which "resulted directly and only from the use of force that was excessive to the need, and that (4) the force used was objectively unreasonable." *Flores v. Palacios*, 391 F.3d 391, 396 (5ᵗʰ Cir. 2004).  "To

---

[6] A seizure may be shown "by means of physical force or show of authority" when the officer has "in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  An officer is required to have reasonable suspicion to temporarily detain a suspect under the Fourth Amendment. *Id.* at16-19.

determine whether a seizure was objectively reasonable, and thus whether an injury is cognizable, we ask whether the totality of the circumstances justified [that] particular sort of search or seizure," balancing the "amount of force used against the need for force." *Id.* at 398-99. *See also Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)("To prevail on a Fourth Amendment excessive force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) the excessiveness of the force was unreasonable." To decide whether the seizure was objectively reasonable, generally the court must ask if the totality of the circumstances justified that kind of search or seizure. *Id., citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Nevertheless, the Fifth Circuit has narrowed the test and held that "'[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting.' Therefore, any of the officers' actions leading up to the shooting are not relevant for purposes of an excessive force inquiry in this Circuit." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014), *quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001)("The excessive force inquiry is confined to whether the Trooper was in danger *at the moment of the threat* that resulted in the Trooper's shooting Bazan. '[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe at that moment, that there was a threat of physical harm [citations omitted [emphasis in original].'"), *citing Young v. City of Killeen*, 775 F.2d 1349, 1353

(5th Cir. 1985)(finding *no* liability where "only fault found against [the officer] was his negligence in creating a situation where the danger of such a mistake would exist").[7]  Furthermore the law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others." *Id.* at *4, *quoting Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2433 (2011).  Furthermore, "'[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Id., quoting Graham v. Connor*, 490 U.S. 386, 396 (1989).

The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force.  *Id.* at 399.  "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004), *quoting Tennessee v. Garner*, 471 U.S. 1, 3

---

[7]     In *Young*, the Fifth Circuit opined, "The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest.  There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation.  The government has the right to employ deadly force under some circumstances, and there are interests to be balanced in deciding the reach of constitutional demand."  775 F.2d at 1353.

(1985).  *See also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)("An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others.").  The reasonableness of the force must be judged from the view of a reasonable officer on the scene.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Moreover, the resulting injury must "be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed."  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing"); *Glenn v. City of Tyler*, 22 F.3d 307, 315 (5th Cir. 2001)(concluding that "handcuffing too tightly, without more, does not amount to excessive force").  Only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment.  *Flores*, 381 F.3d at 397-98.

### 4.  *Unreasonable Search and Seizure Under § 1983*

> The Fourth Amendment protects "the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile.  There he is protected from unwarranted governmental intrusion.  And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has a right to know it will be secure from an unreasonable search of an unreasonable seizure.

*Hoffa v. U.S.*, 385 U.S. 293, 301 (1966).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const. amend. IV. Unless there is consent or exigent circumstances,[8] "entry  into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. U.S.*, 451 U.S. 204, 211-12 (1981), *citing Payton v. New York*, 445 U,.S. 573 (1980), and *Johnson v. U.S.*, 333 U.S. 10, 13-15 (1948). *See also Osborne v. Harris County, Texas*, ___ F. Supp. 3d __, Civ. A. No. H-13-435,2015 WL 1509235, at * (S.D. Tex. Mar. 31, 2015)("'[S]earches and seizures inside a home without a warrant are presumptively unreasonable.'"), *citing Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

It is also well established that a warrantless arrest under the Fourth Amendment must be based on probable cause, i.e., when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013); *U.S. v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). For probable cause there must be more than a bare suspicion of

---

[8] "Exigent circumstances" excuse a police officer from having to obtain a warrant because "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *v. Stuart*, 547 U.S. 398, 403 (2006). Exigent circumstances allow law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* The court examines the circumstances objectively, not from the officers' subjective viewpoint. *Id.* at 404.

wrongdoing, but substantially less that what is needed to support a conviction. *Wadley*, 59 F.3d at 512.  The purpose of requiring a warrant is to permit a neutral judicial officer to determine whether police have probable cause to make an arrest or conduct a search. *Id.* at 212.

The interests protected by an arrest warrant are different from those of a search warrant. *Id.* at 213.  An arrest warrant is issued by a magistrate judge if the petitioner shows that probable cause exists to believe that the subject of the warrant has committed an offense, and it mainly exists to protect an individual from an unreasonable seizure. *Id.*  On the other hand, a search warrant "is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.*  "'An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" *Osborne*, 2015 WL 1509236, at *7, *citing U.S. v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).  "Unlawful detention and arrest claims 'implicate the Fourth Amendment's proscription against unreasonable seizures.'"  *Id.* at *13, *citing Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 845 (5th Cir. 2009).

Generally there are three kinds of encounters between police and an individual:  (1)  "A consensual encounter, in which the individual willingly agrees to speak to police, may be initiated by police without any objective level of suspicion," and

without more, does not constitute a Fourth Amendment seizure; (2) "A limited investigative stop is permissible if there is a 'reasonable suspicion' that a person has committed or is about to commit a crime"; and (3) "An arrest must be based on probable cause." *Osborne*, 2015 WL 1509236, at *13.

### 5. *Qualified Immunity for Officers in their Individual Capacity Under § 1983*

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009). Thus the Court examines whether the "officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808. A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions."). To be

clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Id.* at 350, *quoting Anderson*, 483 U.S. at 640. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  In negating the defense, the plaintiff cannot rely on conclusory allegations and assertions, but must raise genuine issues of material fact as to the reasonableness of the defendant's conduct.  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  The reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when defendant-official raises a qualified immunity defense in his individual capacity, a heightened pleading standard must be met by Plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.[9]  In *Schultea v. Wood*, 47 F.3d

_____

[9] The Fifth Circuit subsequently decided not to apply *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)(striking down the heightened pleading requirements in § 1983 actions against municipalities) to claims against individual government officials in their individual capacities, regarding which "we are still bound by *Elliott* and its

1427, 1429-34 (5th Cir. 1995)(*en banc*), discussing development of qualified immunity defense and pleading rules, the Fifth Circuit further opined, "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require the plaintiff to reply to that defense in detail.  By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.  A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *See also Floyd v. City of Kenner, La.*, 351 Fed. App'x 890, 893 & n.2 (5th Cir. 2009).

In *Morgan v. Hubert*, 335 Fed. Appx. 466, 472-73 (5th Cir. 2009), the Fifth Circuit reviewed *Schultea*'s standard (requiring plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's contact at the time of the alleged acts").  The panel pointed to the reasoning in *Schultea* in requiring a heightened pleading standard in the face of a defendant's assertion of qualified immunity:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions.  Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants* [emphasis added by *Morgan* panel]."  "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual

progeny." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

*Morgan*, 335 Fed. Appx. at 469-70, *citing Schultea*, 47 F.3d at 1432-34.

### 6. *False Arrest Under Federal Law*

The Fourth Amendment right to be free from false arrest-- arrest without probable cause- was clearly established when Melisa Carter and Chris Smith were arrested. *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975). The only issue regarding warrantless false arrest and pretrial confinement is whether there is probable cause for detaining the arrested person pending further proceedings. *O'Dwyer v. Nelson*, 310 Fed. Appx. 741, 745 (5th Cir. 2009); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004)(for false arrest or false imprisonment a plaintiff must show that the defendant did not have probable cause to arrest him.). Probable cause has been defined by the Supreme Court as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979), *quoted by Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000).

To overcome a qualified immunity defense, the plaintiff must show that the officers could not reasonably believe that they had probable cause to arrest the plaintiff for any crime. *Id.*; *Cole v. Carson*, ____ F.3d ____, Nos. 14-10228, 15-10045, 2015 WL 5672071, at *7 (5th Cir. Sept, 25, 2015)("[T]he relevant actors

must be aware of facts constituting probable cause to arrest or detain the person for any crime."). "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). The use of fabricated evidence to obtain a person's arrest can violate the Fourth Amendment. *Cole*, 2015 WL 5672071, at *7.

### 7.  *Assault and Battery Under Texas Common Law*

The elements of battery under Texas common law are (1) a harmful or offensive contact (2) with a plaintiff's person; the elements of assault are (1) apprehension of (2) an immediate battery. *Jackson v. Texas Southern Univ.*, 997 F. Supp. 2d 613, 632 (S.D. Tex. 2014), *citing Doe v. Beaumont I.S.D.*, 8 Supp. 2d 596, 616 (E.D. Tex. 1998). Although the two torts are "related buy conceptually distinct," the Texas Penal Code § 22.01(a)[10] joins the two common law tots under its definition of "assault." *City of Watauga v. Gordon*, 434 S.W. 3d 586, 589 (Tex. 2014). As a result, a number of civil courts mix them together under the term

---

[10] The statue provides that a person commits an assault if he

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> )3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or knows or should reasonably believe that the other will regard the contact as offensive or provocative.

"assault." *Id.  See, e.g.,  Hamilton v. Pechacek*, 319 S.W. 3d 801,
811 (Tex. App.--Fort Worth 2010)(*citing Gibbins v. Berlin*, 162 S.W.
3d 335, 340 (Tex. App.--Fort Worth 2005) "A person commits an
assault by intentionally, knowingly or recklessly causing bodily
injury to another."). Relying on the Restatement (Second) of Torts
§ 18, the Texas Supreme Court noted "that it was the offensive
nature of the contact, not its extent, that made the contact
actionable; 'Personal indignity is the essence of an action for
battery; and consequently the defendant is liable not only for
contacts which do actual physical harm, but also for those which
are offensive and insulting.'" *City of Watauga*, 434 S.W. 3d at
590.

    "The actions of a police officer in making an arrest
necessarily involve a battery, although the conduct may not be
actionable because of privilege." *City of Watauga v. Gordon*, 434
S.W. 3d at 594.  A police officer is privileged to use reasonable
force.  *Id., citing Tex. Dep't of Pub. Safety v. Petta*, 44 S.W. 3d
575, 579 (Tex. 2001).  Under Texas common law, a police officer is
not liable for assault if he only uses force reasonably necessary
to effectuate the arrest.  *Petta*, 44 S.W. 3d at 579 (A police
officer may not use force greater than necessary to make an
arrest.).  The reasonably prudent officer standard is used to
determine if there has been an assault.  *Spencer v. Rau*, 542 F.
Supp. 2d 583, 593 (W.D. Tex. 2007), *citing Telthorster v. Tennell*,
92 S.W. 3d 457, 465 (Tex. 2002)("To establish good faith, Officer
Telthorster must show that a reasonably prudent officer, under the
same or similar circumstances, could have believed that his conduct

-34-

was justified based on the information he possessed when the conduct occurred.").

### 8.  *Official Immunity Under Texas Law*

Official immunity is an affirmative defense that may be raised by a government official who has been sued in his individual capacity. *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W. 3d 835, 843 (Tex. 2007).  It is known by various terms, including "official immunity," "qualified immunity," "quasi-judicial immunity," and "discretionary immunity." *Methodist Hospitals of Dallas v. Miller*, 405 S.W. 3d 101, 104 n.5 (Tex. App.--Dallas 2012).

The official immunity defense under Texas law is "substantially the same" as that of federal qualified immunity. *Crostley v. Lamar County, Texas*, 717 F.3d 410, 424 (5th Cir. 2013). Under the affirmative defense of official immunity, a government employee may be immune from a suit that arises from (1) his performance of discretionary duties (2) in good faith, (3) if he was acting in the course and scope of his authority. *City of Brazoria, Texas v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *4 (Tex. App.--Houston [14[th] Dist.] May 28, 2015), *citing City of Pasadena v. Belle*, 297 S.W. 3d 525, 530 (Tex. App.--Houston [14[th] Dist.] 2009), and *Green v. Alford*, 274 S.W. 3d 5, 16 n.11 (Tex. App.--Houston [14[th] Dist. 2008, pet. denied).  An action involving personal deliberation, decision, and judgment is discretionary, while actions that require obedience to orders or the performance of a duty regarding which the actor has no choice are ministerial. *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 654 (1994).  Texas courts have held that police officers are exercising discretion

when performing their duties. *Id., citing Dent v. City of Dallas*, 729 S.W. 2d 114, 117 (Tex. App.--Dallas 1986, writ ref'd n.r.e.)(holding officer was performing discretionary act in deciding when and how to arrest suspect), *cert. denied*, 485 U.S. 977 (1988). Under the official immunity defense, sometimes called the doctrine of qualified "good faith" immunity, good faith is "a standard of objective legal reasonableness that disregards the police officer's subjective state of mind." *Id., citing Belle*, 297 S.W. 3d at 530. An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. *Id.* at 656. "To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the [action]; the plaintiff must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's actions." *Id.* at 657, *citing inter alia Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993)("However, if genuine issues of material fact exist as to whether the defendants did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper."). Qualified or good faith immunity is not available if the officer asserting that affirmative defense "took the action with malicious intention to cause a deprivation of constitutional rights or other injury." *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

The burden of proof is first on the officers to show they are entitled to official immunity from Plaintiffs' claims.  *Id.*, *citing id.*  Defendants bear the burden to prove conclusively that "a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information that he possessed at the time." *Id., citing id.* Requiring a balancing test, good faith is judged on how a reasonably prudent officer could have assessed the need, i.e., the urgency of the circumstances requiring police intervention, to which an officer responds and the officer's course of action, based on his perception of the facts at the time of the event.  *Id., citing Wadewitz v. Montgomery*, 915 S.W. 2d 464, 467 (Tex. 1997). Then in order to rebut such a showing by Defendants, Plaintiffs must then demonstrate that "no reasonable person in the officer's position could have thought the facts were such that they justified the officer's actions." *Id., citing id.*  The Texas Supreme Court opined in *Wadewitz* at 467, that for rebuttal and to raise a genuine issue of material fact for trial, a party must address the following need/risk factors:

> In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result.  The 'risk' aspect of good faith, on the other hand, refers to the countervailing public safety concerns:  the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from

-37-

reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

### 9.  *Allegations of Plaintiffs' First Amended Complaint (#31)*

Plaintiffs allege that "Myers had a history and pattern of abusing his office and power and was removed from the police force for excessive force and abuse of a detainee." #31, ¶ 3.1. As noted above, they allege that before the incidents involving Plaintiffs here, as evidenced by the video camera in his police car, Myers, while on patrol, stopped a man, pushed his face against the lid of his truck in summer heat and held it there until the detainee was severely burned.   During the investigation that followed, his superiors reviewed the tapes, but did not suspend or discipline Myers, and allowed him to continue patrolling, although they did refer the matter to the district attorney for presentation to a Grand Jury.  *Id.* at ¶¶ 3.2–3.3.  The Chief of Police and the City Manager were aware of Myers' misconduct and the Chief watched the video of the assault.  The City's failure to remove Myers from patrolling the streets, to discipline or suspend or terminate him or place him under constant supervision, constituted deliberate indifference to the right of citizens.  *Id.* at ¶ 4.4.  Myers was ultimately indicted by the Grand Jury for Felony Official Oppression based on this incident and pled guilty, agreeing never to work again in law enforcement.  *Id.* at ¶ 3.23.

Defendant Officer Stacey Smith, in the midst of a bitter divorce from Plaintiff Officer Chris Smith, was a close friend of Myers and supported Myers despite his misconduct.  They, "with

malice and in furtherance of personal vendettas, which they subjectively and objectively knew to be violations of the Plaintiffs' civil rights," and other officers, discussed the matter and plotted to "get Chris" and even warned Chris Smith that "Stacey, Myers and her crew are gunning for you." *Id.* at ¶¶ 4.2 and 3.5. Stacey Smith purportedly threatened Chris Smith that she would use her position as a police officer against him. *Id.* at ¶ 3.5.

Plaintiff Melisa Carter (Carter") and Defendant Stacey Smith both live at the Connection Apartments in Huntsville, Texas. The complaint asserts that Stacey Smith is easily offended and that Carter inadvertently offended Stacey Smith before the incidents at issue here. *Id.* at ¶ 3.7. On August 15, 2012, Stacey Smith saw Carter, a registered nurse, returning from work, and asked Myers, who was on patrol duty, to apprehend Carter on the pretext that Stacey Smith had smelled marijuana around Carter's apartment. Carter was asleep when she was awakened by Myers' pounding on her door. Myers accusingly asked why it took Carter so long to answer her door and then falsely stated to her that the police had received a complaint that a man ran out of Carter's apartment and that an odor of marijuana had emanated from it. *Id.*, ¶ 3.9. Carter responded that she had been asleep and needed to get her glasses and put on clothes before answering the door and insisted that no man or marijuana had been in her apartment. *Id.* at ¶ 3.10. Myers ordered Carter out of her apartment, where Stacey Smith was "waiting and gloating." *Id.* at ¶ 3.10. Carter then stepped back into her apartment and told Myers that she wanted to be present

while he looked around because she was concerned about her dogs.
Myers became angry, shouted at Carter, and physically attacked her
without provocation.  *Id.* at ¶ 3.11.   Overpowering Carter and
causing her extreme pain, Myers forced Carter to bend over the
eating bar in her apartment, forcefully pulled her arms behind her
and immobilized them, and laid on top of her with his full body
weight.  He then accused Carter of resisting arrest, handcuffed her
so tightly that he caused extreme pain to her wrists, yanked her
to her feet, led her out to her front porch, and shoved her to the
ground, while Stacey Smith watched, encouraged Myers' actions, and
scoffed, "When a cop tells you what to do, you had better do it."
*Id.* at ¶¶ 3.12-3.13.

     Other officers and a drug dog appeared, but realized it
was not a legitimate arrest and left.  The drug dog sat down at one
point outside the apartment and an officer proclaimed it was a
"hit," but left without taking the dog into the apartment.  *Id.* at
¶ 314.   Carter, crying, handcuffed, and in extreme pain,
accompanied one of the responding officer through her apartment,
and then he left.  *Id.* at ¶ 3.15.  Myers, without informing her why
she was arrested, transported Carter to the Walker County Jail,
where she remained that night and part of the next day and where
she was informed that she was charged by Myers and Stacey Smith
with Interference with Public Duties.[11]  *Id.*  Despite the attack on

---

[11] *See* Tex. Penal Code Ann. § 38.15(a)(1) ("A person
commits an offense if the person with criminal negligence
interrupts, disrupts, impedes, or otherwise interferes with . . .
a peace officer while the peace officer is performing a duty or
exercising authority imposed or granted by law."   "It is a defense
to prosecution under this section that the interruption,

Carter, which was witnessed in part by unnamed senior officers, the City retained Myers on street patrol. *Id.* at ¶ 3.16. Carter filed a timely complaint against Myers and Stacey Smith with the City. *Id*.

On or about August 20, 2012 at approximately 11:25 p.m., Chris Smith was driving southbound on State Highway 75 in the City of Huntsville when he was hit by a tractor trailer rig making a wide right-hand turn from the inside lane of the street. Officers arrived at the scene, investigated, and ticketed the driver of the rig for lack of insurance and lack of trailer license plates, but not for the accident. *Id.* at ¶ 3.17.[12]

Meanwhile, on duty across town, Myers learned either from Stacey Smith or from listening to the police radio that Chris Smith was involved in a traffic accident. In furtherance of his and Stacey Smith's plot to "bust" Chris Smith, Myers rushed to the scene and skidded to a stop near the accident. *Id.* at ¶ 3.18. Although Chris Smith had already been questioned and released by responding officers, Myers ordered Chris Smith to step on a line to test for alcohol because Stacey Smith had told Myers that Chris Smith always drinks and drives. *Id.* ¶¶ 3.18-3.19. Chris Smith, aware of his estranged wife's relationship with Myers, objected to

---

disruption, impediment, or interference alleged consisted of speech only." *Id.*, § 38.15(d). *See Haggerty*, 391 F.3d at 656-58, 659-60 (dissent).

[12] Chris Smith sued for and obtained compensation for damages to his vehicle in a local Justice of the Peace Court. *Id.*

being harassed, but took the test and passed.  *Id.* at ¶ 3.19.[13]
Myers then ordered Chris Smith to place his hands on his vehicle
and submit to a physical search.  *Id.* at ¶ 3.20. Myers ordered
Chris Smith to turn around and hand Myers the pocket knife he had
in a sheath on his belt.  Chris Smith did so, and Myers pointed his
firearm into Smith's face.  *Id.* at ¶ 3.20.  Myers arrested Smith
and took him to jail, where Chris Smith spent the night, and Myers
charged Chris Smith with Driving Under the Influence.  *Id.* at ¶
3.21.

      The next morning Stacey Smith and Myers celebrated at the
police station in front of the department staff and Chris Smith's
children and exchanged "high fives,"  making such remarks as "I
told you I would bust the [expletive]" and "you the man."  *Id.* at
¶ 3.22.

**10.  *Defendants' Motion to Dismiss (#32)***

      Defendants complain that Plaintiffs fail to separate or
identify their claims so as to give fair notice to each of the
three Defendants of which allegations were made against each, and
by which of the two separate Plaintiffs.

      Defendants first argue that there is no allegation
supporting a cognizable claim against Officer Stacey Smith.  The
only allegations against Stacey Smith are that she encouraged
fellow officers to arrest Plaintiff Chris Smith on the grounds that
he regularly drove when drunk.  On the day after the arrest

---

      [13]  Defendants state that after administering the field
sobriety tests to Chris Smith, Myers concluded that Plaintiff
Smith had been driving drunk on August 20, 2012.  #32 at p. 12.

occurred, she also allegedly celebrated Smith's arrest at the police station with other officers, clearly not a constitutional violation. Moreover, it was Myers, not Stacey Smith, who arrested Chris Smith after Chris Smith was involved in a traffic accident. The relevant question is whether Myers could have reasonably believed, at the time of the arrest and based on relevant law and the information provided to him, that his arrest of Chris Smith was supported by probable cause. Chris Smith admits he was involved in a traffic accident and that he was suspected of drunk driving, but he does not claim that he was not drunk and he does not show in the complaint that probable cause for his arrest did not exist.[14] He has alleged that Myers had been told by a fellow officer that Chris Smith routinely drove when drunk, information that might support probable cause for his arrest.[15] Defendants

_____

[14] The Court notes that to prevail on a § 1983 false arrest claim, the plaintiff bears the burden to show that the police officer did not have probable cause to arrest him. *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). Probable cause is found "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* at 655-56. The police officer is entitled to qualified immunity if a reasonable officer in his position could have believed that in light of the totality of the facts and circumstances of which the police officer was aware, there was a fair probability that the police officer had committed or was committing an offense. *Id.* at 656. "Fair probability" for purposes of probable cause requires more that a bare suspicion, but less than a preponderance of evidence. *Id., citing U.S. v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001). Even if the police officer reasonably but mistakenly determined that probable cause existed, he is entitled to immunity. *Id.*

[15] It is well established that an individual's innocence of a criminal charge is not relevant to a § 1983 claim of deprivation of liberty without due process of law as the Constitution does not guarantee that only the guilty will be

maintain that no allegations in Plaintiffs' amended complaint plausibly show that Stacey Smith could reasonably have known that probable cause was lacking for Myers' arrest of Chris Smith.   Thus Chris Smith's claims against Stacey Smith must be dismissed.

Defendants further contend that Chris Smith fails to allege facts that overcome Stacey Smith's qualified immunity defense.   The allegations do not state with factual detail and particularity, as required by the heightened pleading standard for overcoming qualified immunity, that Stacey Smith had fair notice that her alleged actions violated clearly established law or facts that support a claim against each defendant officer. *Schultea*, 47 F.3d at 1432-34; *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)(where defendants do not act in unison, the court must examine each individual's entitlement to qualified immunity separately). Chris Smith is required, but failed, to allege facts showing that no police officer could reasonably have believed that Stacey Smith's alleged conduct was within the bounds of appropriate responses under these particular circumstances and that she violated Chris Smith's constitutional rights, so her immunity defense remains intact.

Nor, insist Defendants, does Plaintiff Carter allege facts supporting a claim against Stacey Smith to show that Carter's arrest was not supported by probable cause.   Carter was charged with criminally interfering with public duties.   Texas Penal Code

arrested; '[a] reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers . . . is entirely consistent with 'due process of law.'". *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

§ 38.15(a)(1) provides, "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."  Plaintiffs' pleading does not show a lack of probable cause to support the charge, i.e., it does not allege facts showing that she did not interfere with public duties or did not illegally possess marijuana.  An officer has probable cause to make an arrest "'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  *Haggerty v. Texas Southern Univ.*, 391 F.3d 653. 655-56 (5th Cir. 2004), *quoting Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  "[E]ven if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable."  *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1999).  Defendants argue that Carter has no federal claim for false arrest under § 1983 unless probable cause was lacking; probable cause for an arrest or any offense is a defense to an unlawful arrest under § 1983.  *See Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1989)("Section 1983 is a federally created cause of action to redress civil rights violations.  The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right."); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).  Carter failed to allege facts showing that

probable cause was lacking for her arrest, and thus her allegations do not plausibly show that Stacey Smith violated Carter's constitutionally protected rights. *Id.*

Carter also fails to allege facts that overcome Stacey Smith's qualified immunity defense, i.e., that no police officer could reasonably have believed that Stacey Smith's conduct toward Carter was within the bounds of appropriate responses under the particular circumstances of this case. *Schultea*, 47 F.3d at 1432-34; *Babb*, 33 F.3d at 477. Thus the Court should dismiss Carter's claims against Stacey Smith.

Defendants maintain that no allegation states a claim against Myers. Chris Smith does not allege facts showing that probable cause was lacking for his arrest. His allegations only show that Myers was told by a fellow officer that Chris Smith often drove while drunk, that Myers participated in the investigation of Chris Smith's traffic accident, that Myers administered field sobriety tests, and that Myers concluded that Smith had been driving drunk on August 20, 2012, all within the bounds of appropriate responses under the particular circumstances of this case.

Chris Smith also fails to allege facts supporting a claim against Myers. While describing Myers' arrest and handcuffing of Carter, Carter does not allege facts showing that probable cause was lacking or that the force described was excessive to the need and objectively unreasonable. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An officer is not responsible for unfortunate

results of his use of necessary force.  *Hill v. Carroll County*, 587 F.3d 230, 237 (5th Cir. 2009).

Nor does Carter allege facts that overcome Myers' qualified immunity defense, i.e., that no police officer could reasonably have believed Myers' alleged conduct as to Carter was within the bounds of appropriate responses under the circumstance of this case.

Nor do Plaintiffs' allegations support a claim against the City of Huntsville.  They have not shown through specific facts the existence of an unconstitutional City policy  nor its relationship to, i.e., that it was the moving force behind, the alleged constitutional violation.  *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).  They must show factually that not only that the City had a constitutionally deficient policy, but also that the City's policymaker knew of the existence of the inadequate policy and nevertheless deliberately chose not to remedy the identified deficiency, and that the policy actually caused a deprivation of the plaintiff's rights.  *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-05 (1997); *Piotrowski*, 237 F.3d at 580.

Defendants maintain that Plaintiffs' allegations fail to show any constitutional deprivation, so the City cannot be liable. Thus it is irrelevant whether a city policy would have authorized the conduct to which Plaintiffs object.  Nor do they show the existence of any unconstitutional policy, but merely establish a single previous case when a police officer sued excessive force, was investigated, charged with a crime, and discharged from the

City's police department, in other words, a facially constitutional
"policy" that does not tolerate use of excessive force.
Plaintiffs' allegation that an officer violated the City's policy
prohibiting use of excessive force cannot support a claim against
the City. *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th
Cir. 1989)("A municipality may be liable under section 1983 only
if a municipal policy caused the deprivation of a right protected
by the Constitution or federal laws.).

Plaintiffs' complaint show that they rely on an isolated
incident of alleged unconstitutional conduct by a City employee,
not a City policy that could impose liability. *City of Oklahoma
v. Tuttle*, 471 U.S. 808, 824 (1985); *Webster v. City of Houston*,
735 F.2d 838, 850-51 (5th Cir. 1984)(*en banc*)("[A]n isolated
decision not to discipline an officer after a single illegality
could not itself supply the causal link" "between some action or
inaction by the city and the asserted constitutional
deprivation."), *citing Bennett v. City of Slidell*, 728 F.2d 762(5th
Cir. 1984)("Isolated violations are not the persistent often
repeated, constant violations that constitute custom and policy.").

Furthermore, when "a plaintiff seeking to establish
municipal liability on the theory that a facially lawful municipal
action has led an employee to violate a plaintiff's rights must
demonstrate that the municipal action was taken with 'deliberative
indifference' as to its known or obvious consequences," as is the
case here. *Board of County Commissioners of Bryan County*, 520 U.S.
at 497.  "[P]roof of an inadequate policy, without more, is
insufficient to meet the threshold requirements of § 1983."

-48-

*Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1983). "[M]unicipal liability must be predicated on a showing of 'fault,' not merely 'responsibility.'" *Id.*

In addition a plaintiff must show deliberate indifference, i.e., that "a government actor disregarded a known or obvious consequence of his action." *Board of County Commissioners of Bryan County*, 520 U.S. at 410. Mere negligence will not suffice to establish a constitutional violation. *Daniels v, Williams*, 474 U.S. 327, 328 (1986); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)("The Supreme Court has held that the negligent act of a state official which results in unintended harm to life, liberty or property, does not implicate the Due Process Clause."), *citing Daniels v. Williams*, 474 U.S. at 328-29. Plaintiffs must show not only an unconstitutional decision, but a decision by the City itself to violate the Constitution. *Gonzalez*, 996 F.2d at 759. As the Fifth Circuit opined in *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998),

> The Supreme Court has established two fundamental requirements for holding a city liable under § 1983 for inadequate hiring and training policies: culpability and causation. First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences. Second the municipality must be the "moving force" behind the constitutional violation.

Defendants insist that Plaintiffs have not and cannot satisfy either element of this test even though they have the burden to meet both. Thus their claims against the City should be dismissed.

Plaintiffs note that they do not respond to Plaintiffs' reassertion of claims under Texas law because this Court dismissed them with prejudice based on legal authority.

## 11.  *Plaintiffs' Response (#35)*

Reiterating their previous allegations, Plaintiffs charge that Officers Myers and Stacey Smith "used their positions and badges to commit what otherwise would have been several felonies but for their badges." #35 at p. 2.  They claim immunity because they "'suspected' marijuana in the first instance, and 'suspected' drunk driving in the second when [] however, the hapless victims were wholly innocent or no marijuana or evidence of drinking existed and all charges were dismissed." *Id.*  Ignoring their own burden to state a claim and attempting to shift the focus onto Defendants, Plaintiffs assert that "given the history of much worse court cases, it is not surprising that the officers are well trained in providing pretexts for illegal action up to and including shooting innocents in the back." *Id.* at pp. 2-3.  They assert that Defendants "ignore and do not refute their private animus and bad motives in both attacks," nor "properly pleaded facts that neither victim had done anything wrong, let alone that would rise to probable cause or the right to arrest." *Id.* at p. 3.  They object that not only is there a complete lack of probable cause in the arrests, but "bad motives undeniably prove the constitutional violations." *Id.*  They point out that in both cases all criminal charges were subsequently dropped. *Id.* at p. 4.  They highlight the fact that no drugs or suspects were found in Carter's apartment and argue that Carter cooperated throughout, that Myers

had no legitimate reason for being there and thus Carter could not
have interfered with the police's public duties.  They also accuse
Plaintiff "in a perfunctory mostly boilerplate motion" of
requesting the Court "to dismiss this case with phony block quotes
that are actually Defendant's disingenuous recasting of what was
actually pleaded," i.e., "facts that are a clear violation of the
Constitutional rights of the Plaintiffs here of which any
reasonable officer is aware.  Officers may not use their badge to
assault, batter and kidnap citizens who have done no wrong simply
because the officer has a personal animus."  *Id.* at p. 4.
Plaintiffs insist that Officers Stacey Smith and Myers are not
entitled to qualified immunity because they conspired to assault
and arrest Plaintiffs for personal reason or "just to bully them,"
and acted with mischief and venom, while Plaintiffs did not commit
any wrongdoing and were minding their own business.

        Plaintiffs object to the Court's earlier dismissal of the
state law tort claims under the Texas Torts Claims Act, which they
insist was not triggered and is not applicable because they did not
sue the city under Texas law, but only under federal law.
Furthermore, they contend that the officer Defendants are not
entitled to qualified immunity from the tort claims under Texas law
because they have failed to plead each of the three elements of
qualified immunity under Texas law: that they were performing
discretionary duties (2) within the scope of their authority, and
(3) they were acting in good faith.  *Telthorster*, 92 S.W. 3d at
461.  Instead, claim Plaintiffs, Myers and Stacey Smith acted "in

bad faith by using their positions and power to retaliate against hapless citizens for personal reasons." #35 at p. 15.

## 11. Defendants' Reply (#37)

Defendants object that Plaintiffs' brief is composed entirely of argument and citation of legal decisions that do not apply to their factual allegations in their complaints. They completely avoid the controlling objective standards that apply to claims under the Fourth Amendment and qualified immunity, but instead put forth speculative attacks and conclusory allegations about police officers' purported motives. Their bad faith allegations are unsupported by factual allegations and fail to state a claim because they do not satisfy the applicable objective standards. They fail to state the facts that support the elements of a claim against the City.

Defendants further challenge Plaintiffs' current contention that the Texas Tort Claims Act ("TTCA") does not apply and the Court erred in dismissing the state-law claims against the individuals as a matter of law in its Opinion and Order of July 10, 2015 (#28 at pp. 28-33[16]).  They note that in Plaintiffs' First

_____

[16] This Court opined,

> Moreover, under the TTCA, which "covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity," "'[i]f suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'"  Tex. Civ. Prac. & Rem. Code § 101.106(e); _Gil Ramirez Group, LLC v. Houston I.S.D._, ____ F.3d____, 2015 WL 2383797, at *11 (5th Cir. May 18, 2015), _citing Mission Consol. I.S.D. v._

-52-

*Garcia*, 253 S.W. 3d 653, 658 (Tex. 2008)(interpreting § 101.106(e) to cover all tort claims, including those for which immunity was waived by the TTCA). *See also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (Tex. 2010)(any state common law tort claim brought against a governmental unit and its employees, including intentional torts, will allow the employee defendants to be dismissed if the governmental unit moves to do so). Here the City, Stacey Smith, and Myers assert that Plaintiffs' claims against Stacey Smith and Meyers in their individual capacities are statutorily barred by § 101.106(e) because under § 101.106(a), "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." The same is true under Tex. Civ. Prac. & Rem. Code § 101.106(f) if the employees have been sued in their official capacity *Morales v. City of Sugar Land*, No. Civ. A. H-13-3575, 2015 WL 162203, at *7 (S.D. Tex. Apr. 9, 2015), *citing Stinson v. Fontenot*, 435 S.W. 3d 793, 794 (Tex. 2014)(*per curiam*).

Therefore, because the City of Huntsville has so requested, the Court dismisses with prejudice all the tort claims for damages under Texas law (false arrest, assault and battery, malicious prosecution, false imprisonment, negligence, and conspiracy) asserted against Stacey Smith and Myers in their individual capacities pursuant to § 101.106(e).

This Court further noted that Section 101.106(f) provides,

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be one against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed

-53-

Original Petition (#1-1, Ex. A, filed before removal of this case to federal court and the key pleading for evaluating the election of remedies under the TTCA), Plaintiffs alleged in ¶ 28 that they "have complied with the notice of claim requirements by Texas law." The only notice of claim requirements under Texas law is that under the TTCA, Tex. Civ. Prac. & Rem. Code § 101.101.

Furthermore, in ¶ 29 of the First Original Petition Plaintiffs allege, "Plaintiff Carter brings claims for false arrest, assault and battery, malicious prosecution and false imprisonment against all defendants." The "all defendants" allegation invokes the provisions of Tex. Civ. Prac. & Rem. Code § 101.106(e)(suit filed against both a government unit and any of its employees requires dismissal of City's employees upon request

---

> unless the plaintiff files amended pleadings dismissing the employee and naming the government unit as defendant on or before the 30th day after the date the motion is filed.

It also observed that

> when an employee acts *ultra vires*, i.e., outside the scope of his authority, the suit is against him in his individual capacity, but section 101.106's election of remedies provision still applies. *Molina v. Alvarado*, _____ S.W. 3d _____, No. 14-0536, 2015 WL 2148055, at *2 (Tex. May 8, 2015). If a plaintiff at the time he files suit does not have sufficient information to determine whether the governmental unit's employee is acting within the scope of his employment, "the prudent choice" is to sue the employee and "await a factual resolution of that question"; if instead he sues both "before being required to do so by the election-of-remedies provision . . . [t]hat choice is still an irrevocable election under section 101.106." *Id.* at *3.

of the City, which was made here, the election of remedies clause on which this Court relied).  Therefore Carter's initial election to sue the City and its employees operated as a matter of law to bar Carter's claim against any individual defendant.  *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 463 (5th Cir. 2010); *Mission Consolidated Indep. Sch. Dist. v. Garcia*, 253 S.W. 3d 653, 658-59 (2008).

Defendants emphasize that ¶ 29 of the Original Petition also asserts, "Plaintiff Smith brings claims of assault and battery, false imprisonment and malicious prosecution against Defendant Myers and Smith via her conspiracy with Myers."  The allegations by Chris Smith invoked Tex. Civ. Prac. & Rem. Code § 101.106(f).[17] *Alexander v. Walker*, 435 S.W. 3d 789, 790-92 (Tex. 2014).  Thus under Tex. Civ. Prac. & Rem. Code § 101.106(e)("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."), Plaintiffs' allegations must be seen as claims against the Defendants in their individual capacities, which are equivalent to claims directly against the City under the Texas Tort Claims Act. Moreover, because the Court has dismissed the tort claims against the individual police Officers under the statutory immunity of § 101.106, the qualified immunity defense issue is moot.  Defendants state, "This Court has already undertaken that analysis and

---

[17] See footnote 16 for the text of § 101.106(f).

correctly found that no such claim is cognizable under Texas law."
#37 at p. 5.

**12. *Court's Decision***

The Court has not changed its mind about the applicability of the Texas Tort Claims Act here. The TTCA "strongly favors dismissal of governmental employees." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 766 (W.D. Tex. 2013), *citing Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W. 3d 781, 785 (Tex. App.--Waco 2005). In addition to this Court's previous ruling (#28) and Defendants' arguments, summarized above, the Court would highlight the fact that while § 101.106 provides an irrevocable "election of remedies" to the plaintiff at the time he files suit, i.e., to chose between suing the governmental unit under the TTCA or suing the employee(s) alone, § 101.106(f) does not contain such an election. *Tipps*, 945 F. Supp. 2d at 766. Section 101.106(f) provides for dismissal of an individual defendant if the plaintiff's suit is based on conduct within the scope of his employment with the governmental unit, here the City of Huntsville, and if it could have been brought under this chapter against the governmental unit; in such a situation the suit is viewed as against the employee in the employee's official capacity only. Tex. Civ. Prac. & Rem. Code § 101.001(5) defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." *Tipps*, 945 F. Supp. 2d at 766. "'An official acts within the scope of her authority if she is

-56-

discharging duties generally assigned to her.'" *Id., citing City of Lancaster v. Chambers*, 883 S.W. 2d 650, 658 (Tex. 1994)(finding that on-duty police officers, pursuing a suspect in their squad car, did not act outside the scope of their authority even though they drove without regard for the safety of others). This principle holds true even if the law enforcement officer acts partly to serve his or her own interests and allegedly commits tortious acts. *Id., citing Hopkins v. Strickland*, No. 01-12-00315-CV, 2013 WL 1183302, at *3 (Tex. App.--San Antonio May 20, 2015)("[A]n act may still be within the scope of the employee's duties even if the specific act that forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job."). As law enforcement officers, Stacey Smith and Myers were acting within the general scope of their duties in investigating Carter's apartment for marijuana and Chris Smith's accident to determine if he was driving under the influence. Even if the law enforcement officer's acts were conducted with improper motives, their actions remain within the general scope of duties of law enforcement officers. *Tipps*, 945 F. Supp. 2d at 767, *citing Chambers*. Plaintiffs here assert that Stacey Smith and Myers acted in bad faith and thus are not entitled to official immunity from suit, which is only available if the officer is performing discretionary duties in good faith within the scope of his authority. Plaintiffs are confusing official immunity with the statutory immunity provided by § 101.106(f), which does not include a good faith requirement. *Tipps*, 945 F. Supp. 2d at 767. While official immunity is a common

-57-

law defense that shields public officials from individual
liability, § 101.106(f) establishes statutory immunity for
government employees who are acting within the general scope of
their employment and the suit could have been brought against the
governmental entity. *Id.* The Texas Supreme Court, in *Franka v.
Velasquez*, 332 S.W. 3d 367, 381 (Tex. 2011), clearly stated that
§ 101.106 "'foreclose[s] suit against a government employee in his
*individual* capacity if he was acting within the scope of
employment.'" *Id., citing Franka*.[18]  The Texas high court
explained that the Texas legislature intended "to discourage or
prevent recovery against an employee," even if the TTCA does not
waive immunity from suit for the governmental unit, such as with
intentional torts. *Id., citing id.* at 375-78.  Accordingly the
Court dismisses the state law claims against Stacey Smith and Myers
in their individual capacities with prejudice as a matter of law.

Moreover, the Court notes that in addition to the § 1983
claims for excessive force and unreasonable search and seizure, and
the state-law tort claims for assault and battery, false arrest,
and conspiracy against the police officers in their individual
capacities, all expressly asserted in the First Amended Complaint,
in their Response Plaintiffs improperly "tack on" state law claims
for burglary, kidnaping, and breaking and entering.[19]  #35 at pp.
4, 15.  These last three claims are not properly before the Court.

---

[18] *In accord, Texas Adjutant General's Office v. Ngakoue*,
408 S.W. 3d 350, 356-58 (2013).

[19] The First Amended Complaint at ¶ 3.10 states that
Carter told Myers that he "was welcome to look" in her house.
Thus he entered by consent.

Even if they were, they, along with the conspiracy claims, would be dismissed with prejudice for the same reasons as the properly pleaded state-law tort claims against the individual police officers in their individual capacities.

Turning to the federal claims against the three Defendants, this Court observes that the pleading requirements under § 1983 for imposing liability on municipalities and police officers acting under color of state law and violating the constitutional rights of citizens have long been established, as have the policy reasons for them.[20] Plaintiffs are represented by

---

[20] "Qualified immunity balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Moreover, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor"; "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Commissioners of Bryan County*, 520 U.S. at 1386, 1388, *citing Monell*, 436 U.S. at 694, 689. Furthermore, "'while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others. We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.'" *Id.* at 403, *citing Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and *Monell*, 436 U.S. 665-683. Requiring a "'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of it duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have th force of law" *Id.* at 403-04, *citing Monell*, 436 U.S. at 694, 690-91. A plaintiff is also required to "demonstrate that, through its *deliberate* conduct, the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the

counsel.  There is no reason why Plaintiffs should be permitted to detract from their failure to meet their own pleading burden by means of conclusory, disparaging accusations regarding the police officers' "bad motives."  In this Court's previous Opinion and Order (#28) and in this one, the Court has laid out the black-letter law for pleading civil rights violations under § 1983 and the Fourth Amendment and under Rule 12(b)(6) against municipalities and their police officers.  It has made clear that the standard for determining whether Defendants violated the Fourth Amendment by allegations of excessive force, unreasonable searches and seizures, and false arrest, as well as whether the officers are protected in their individual capacities by qualified immunity, is not the police-officer Defendants' subjective motivation (their alleged "bad motives," "personal animus," and "vendettas"), but the objective reasonableness of their actions and the clearly established statutory or constitutional law of which a reasonable person would have known.  The Court looks not simply at conclusory allegations, but also at the specific facts alleged to support them and whether those facts establish a plausible claim to relief.

First, because Plaintiffs do not identify a policy maker or an officially authorized policy, to impose liability on the City of Huntsville they must allege a widespread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy.  *Monell*, 436 U.S. at 694.  The purported custom or practice must be shown to have "sufficiently

---

deprivation of federal rights."  *Id.* at 404.

numerous prior incidents," as opposed to "isolated instances" of
the use of excessive force and unlawful arrest by law enforcement
officials. *Peterson*, 588 F.3d at 851.  As is the case here, where
"actions of city employees are used to prove a custom for which the
municipality is liable, those actions must have occurred for so
long or so frequently that the police officers' course of conduct
warrants attribution to the governing body of knowledge that the
objectionable conduct is the expected and accepted practice of city
employees." *Webster*, 735 F.2d at 842.  Moreover, "[a] pattern
requires similarity and specificity"; "[p]rior indications cannot
simply be for any and all 'bad' or unwise acts, but rather must
point to the specific violation in question." *Peterson*, 588 F.3d
at 851.  The Court finds that Plaintiffs have failed to plead such
a custom or practice.  At most the complaint asserts three isolated
incidents, each of which is different from the others.  The first,
not a basis of this suit nor related to the alleged conspiracy to
get Chris Smith, in which Myers stopped an individual and burned
his face by forcing it down on a hot truck, resulted in the matter
being referred by the City to the district attorney, who then
presented it to a grand jury, and ultimately Myers pled guilty and
agreed never again to work in law enforcement.  Although Plaintiffs
complain that the City did not take Myers off patrol duty
immediately after the incident, the City's referral of the matter
to the district attorney undermines any allegation that the City
was deliberately indifferent to his misconduct.

        The remaining two incidents, one involving Christopher
Smith and the other, Carter, are too few to constitute a custom or

practice.   Thus the Court finds that Plaintiffs fail to state a claim against the City and against Officers Stacey Smith and Myers in their official capacities under § 1983 and the Fourth Amendment.

The remaining § 1983 claims are against the two police officers in their individual capacities for unlawful arrest and detention without probable cause and the use of excessive force, in violation of the Fourth Amendment of the United States Constitution.   Both Stacey Smith and Myers have asserted a qualified immunity defense, so the key question is could a reasonable officer in the same circumstances have believed that the force applied and/or the arrests made were lawful in light of clearly established law and the information the officers possessed?

In deciding whether a defendant is entitled to qualified immunity in a § 1983 action, the Court must ask whether the law so clearly prohibited his conduct that a reasonable official in the same situation would understand that his action violated the law. *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009).   "An action is 'reasonable' under the Fourth Amendment regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action." *Id.* Nevertheless, even limited detentions require a "reasonable, articulable suspicion that a person has committed or is about to commit a crime." *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002).   Furthermore, continued detention without a reasonable suspicion that the individual has committed or is about to commit a crime violates the Fourth Amendment right to be free from unreasonable seizure.

*I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984), *citing Brown v. Texas*, 443 U.S. 47, 49 (1979).

Myers is shielded from any claims of wrongful search of Carter's apartment because Carter consented to his search of her apartment.  If Myers had believed that the odor of marijuana of which he had been informed emanated from her apartment, he would have had probable cause to detain Carter in light of the clearly established drug laws at the time.  Nevertheless Plaintiffs have alleged that Stacey Smith and Myers plotted to apprehend Carter on the pretext that Stacey Smith had seen a man enter and leave Carter's apartment and had smelled marijuana coming from Carter's apartment.  That information was "information the officers possessed."  As noted, the use of fabricated evidence to obtain a person's arrest can violate the Fourth Amendment.  *Cole*, 2015 WL 5672071, at *7. Myers' use of force on and ultimate arrest of Carter under the alleged facts and circumstances was objectively unreasonable and unlawful because there was no probable cause. *Estate of Manus v. Webster County, Miss.*, No. 1:11-CV-00149-SA-DAS, 2014 WL 1285946, at *4, *rev'd in part on other grounds on reconsideration*, 2014 WL 2207851 (N.D. Miss. May 28, 2014); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

When a plaintiff alleges claims for unlawful arrest and excessive force, the Court must "analyze the excessive force claim without regard to whether the arrest itself was justified. *Deville*, 567 F.3d at 167 n.7, *quoting Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).  Plaintiffs have raised a genuine issue of material fact precluding Myers' qualified immunity defense as

to whether Myers used objectively unreasonable excessive force
against Carter.  According to the facts alleged, Carter's possible
crime (possession of marijuana) was not one of violence, Carter,
herself, was not violent, she posed no immediate threat to the
safety of officer or others, was not actively resisting arrest, nor
attempting to escape, yet Myers' use of force was not only at that
point unnecessary, but caused extreme pain to Carter.  *See Estate
of Manus*, 2014 WL 1285946 at *8.  Similarly after Chris Smith
allegedly passed Myers' sobriety test, his arrest for driving under
the influence lacked probable cause.  Plaintiffs and Defendants
disagree over whether Myers concluded from the sobriety tests he
conducted at the scene that Chris Smith was legally drunk.  In a
Rule 12(b)(6) review, however. the Court must construe the
complaint in favor of Plaintiffs, who allege that Stacey Smith and
Myers plotted to "get" Stacey Smith's estranged husband and who
contend that the sobriety test showed that Chris Smith was not
drunk, but that Myers nevertheless subjected him to a physical
search, pointed his gun at Chris Smith's face, arrested him for
Driving Under the Influence, and took him to jail.  Thus while
Myers' initial stop of Chris Smith might have been reasonable in
the eyes of a reasonable policeman in the same situation as Myers
even if he had been told by Stacey Smith that Chris Smith drinks
and drives,[21] under the facts alleged after Chris Smith passed the

---

[21] "Information" from his fellow police officer Stacey
Smith that her estranged husband, Officer Chris Smith, frequently
drove under the influence of alcohol might or might not be viewed
as reliable.  The Court notes that a "where the relevant actors
do not know of facts constituting probable cause to arrest or
detain a person for any crime," the "[p]retrial use of fabricated

sobriety test Myers had no probable cause to search, threaten Chris Smith with a firearm, and arrest him, thus undermining Myers' qualified immunity defense.

Plaintiffs' claims against Officer Stacey Smith in her individual capacity are not that she personally participated in the alleged unlawful arrests or the use of excessive force against either Plaintiff, but that she conspired with and provided information, encouragement, and direction to Myers, who acted upon that support.  Under Texas law "[t]he elements of false arrest and false imprisonment [a willful detention without consent and without authority of law] are similar enough to be indistinguishable." *Villegas v. Griffin Indus.*, 975 S.W. 2d 745, 754 (Tex. App.--Corpus Christi 1998, no pet.); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W. 3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W. 2d 374, 375 (Tex. 1985).  The Texas Supreme Court has clearly stated that under Texas law, "liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention. False imprisonment's first element may thus be satisfied by conduct that is intended to cause one to be detained, and in fact, causes the detention, even when the actor does not participate in the detention.  We have sometimes referred to this causation standard

evidence to secure a person's arrest can violate the Fourth Amendment."  *Cole v. Carson*, ___ F.3d ___, 2015 WL 5672071, at *7 (5th Cir. Sept. 25, 2015).  Nevertheless, "there must not even 'arguably' be probable cause for the search and arrest for [qualified] immunity to be lost."  *Brown v. Lyford*, 243 F.3d 185, 1 (5th Cir. 2001), *citing Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997); *Haggerty*, 391 F.3d at 656.

as 'instigat[ion]' of the false imprisonment." *Rodriguez*, 92 S.W. 3d at 507.   Courts have applied this instigation standard in determining whether alleged false arrests directed by police officers are constitutional violations under the fourteenth amendment and § 1983.   *See, e.g., Ratliff v. City of Houston*, No. Civ. A. H-02-3809, 2005 WL 1745468, at *26-27 (S.D. Tex. July 25, 2005); *Lopez v. City of Houston*, No. Civ. A. 03-2297, 2005  WL 1770938, at *31 (S.D. Tex. July 25, 2005); *Goodarzi v. Hartzog*, Civ. A. No. H-12-2870, 2013 WL 3110056, at *7-8 (S.D. Tex. June 14, 2013)(and cases cited therein).   Thus Stacey Smith may be liable in her individual capacity for instigating the false arrests and use of excessive force in violation of Plaintiffs' rights under the Fourth Amendment.

### ORDER

Accordingly, for the reasons stated above, the Court

ORDERS that Defendants Diamond URS Huntsville, LLC d/b/a the Connection at Huntsville and Asset Campus Housing Inc.'s motion to join (#24) is MOOT.   The Court further

REAFFIRMS its earlier dismissal with prejudice of the state-law tort claims under the TTCA against Officers Stacey Smith and Christopher Myers in their individual capacities.   In addition the Court

ORDERS that Defendants' motion to sever is DENIED. Finally, the Court

ORDERS that Defendants' motion to dismiss Plaintiffs' claims under § 1983 and the Fourth Amendment against the City and against the two police officers in their official capacities is

-66-

GRANTED, but is DENIED with respect to § 1983/Fourth Amendment claims against Officers Christopher Myers and Stacey Smith in their individual capacities.

**SIGNED** at Houston, Texas, this 29th day of  March  , 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE