United States District Court
Southern District of Texas

**ENTERED**

October 03, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MELISA CARTER and CHRIS SMITH,   §
                                 §
            Plaintiffs,          §
                                 §
VS.                              §     Civ. A. H-14-2776
                                 §
DIAMOND URS HUNTSVILLE, LLC,     §
ASSET CAMPUS HOUSING, INC.,      §
THE CITY OF HUNTSVILLE, TEXAS,   §
OFFICER STACEY SMITH-GALLAR,     §
and OFFICER CHRISTOPHER MYERS,   §
                                 §
            Defendants.          §

### OPINION AND ORDER

Pending before the Court in the above referenced cause, grounded in 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution and seeking damages for alleged excessive force and unreasonable search and seizure against Police Officer Stacey Smith and former Police Officer Christopher Myers in their individual capacities only,[1] are (1) Defendants' motion for summary judgment (instrument #38) and (2) Defendants' objections to Plaintiffs' exhibits submitted in opposition to #38 (#41).

---

[1] In its Opinion and Order of March 30, 2016 (# 45), the Court dismissed Plaintiffs' claims under § 1983 and the Fourth Amendment against the Police Officer Defendants in their official capacities and against the City of Huntsville, Texas. The Court also reaffirmed its earlier dismissal (#28) of state-law claims under the Texas Tort Claims against the Police Officers in their individual capacities. Also available as *Carter v. Diamond URS Huntsville, LLC,* Civ. A. H-14-2776, ___ F. Supp. 3d ___, 2016 WL 12353479 (S.D. Tex. Mar. 30, 2016). Because the instant motion for summary judgment was filed before the Court issued its decision in #45, the motion presents arguments regarding claims under both federal and state law against parties that the Court has since dismissed. Thus the Court does not address those previously dismissed claims.

### *Standard of Review*

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate

-2-

that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

"A party cannot defeat a motion for summary judgment with an affidavit that contradicts, without explanation, his sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Thurman v. Sears Roebuck & Co.*, 952 F.2d 128, 137 n. 23 (5th Cir. 1992)("[N]onmovant cannot defeat summary judgment by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.").

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to

the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

The Court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Rather the nonmovant must identify evidence in the record and demonstrate how it supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### Qualified Immunity

Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit,[2] but from "liability

---

[2] A denial of qualified immunity at the motion-to-dismiss stage, to the extent that it turns on a matter of law, is an appealable final decision under 28 U.S.C. § 1291 because qualified immunity is immunity from suit and, necessarily, shields the official from the burdens of discovery. *Ashcroft v. Iqbal*, 129 S. Ct. at 1946.; *Porter v. Valdez*, 424 Fed. App'x 382, 385 (5th Cir. 2011), *citing Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, *4 (5th Cir. Jan. 17, 2002)("Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost."). "[T]he denial of a motion for summary judgment based upon qualified immunity is [also] a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004), *citing Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). When the district court denies such a motion, if not expressly, then by implication, the court is making two distinct determinations: (1) the conduct at issue is objectively unreasonable in light of clearly established law; and

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009). To demonstrate that he is entitled to qualified immunity, a governmental official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority. *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004). After he does so, in a two-step inquiry, the Court examines (1) whether the "officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the conduct and whether the defendant's conduct was objectively reasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *on remand*, 262 F.3d 897 (2001); *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995). Either step may be addressed first. *Pearson*, 129 S. Ct. at 808. The court applies an objective standard, "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). To be clearly established, "'[t]he contours of the right must be sufficiently clear that a

---

(2) a genuine issue of fact exists as to whether the defendant(s) engaged in such conduct. *Id.* The Fifth Circuit lacks jurisdiction to review conclusions in the second group, but must accept the district court's assessment regarding the sufficiency of the evidence, but it does have jurisdiction to review the first, a legal question. *Id.* at 346-47.

reasonable official would understand what he is doing violates that right.'"  *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'"  *Id.* at 350, *quoting Anderson*, 483 U.S. at 640.  The "clearly established" test is one of "'fair warning:  The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"  *Flores*, 381 F.3d at 400, *quoting Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004), *cert. denied*, 543 U.S. 872 (2004).  "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012).

Officials who act reasonably, but mistakenly, are entitled to qualified immunity; indeed the qualified immunity defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Hunter v. Bryant*, 502 U.S. 224, (1991)("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.")(*citing Anderson*, 483 U.S. at 641); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[A] defendant's acts are held to be objectively

reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).

Generally "in evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness of an official's act as a matter of law," and not leave it as "a factual question for the jury." *Mangieri v. Clifton*, 29 F.3d 1012, 1015–16 (5th Cir. 1994), *citing Hunter*, 502 U.S. at 228 ("Immunity ordinarily should be decided by the court long before trial."); *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 434–35 (5th Cir. 1993), *cert. denied sub nom. Vanover v. Lampkin*, 511 U.S. 1019 (1994). Only when there are "underlying historical facts" in dispute that are "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner" may the court not determine the objective reasonableness, and by extension the applicability of qualified immunity," as a matter of law. *Mangieri*, 29 F.3d at 1016. In *Lampkin* there was a disagreement about "whether force was used against the plaintiffs, the amount of time the plaintiffs were detained, and whether any reason existed to detain the plaintiffs." *Id., citing Lampkin*, 7 F.3d at 434. In *Lampkin* the Fifth Circuit concluded that the district court could not decide whether the officer's activities were objectively reasonable without the trier of fact first deciding what happened. *Id., citing id.*

When Defendants raise a qualified immunity defense, the usual summary judgment burden of proof is altered. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)(*citing Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)), *cert. denied*, 563 U.S. 1021 (2011).  Once the defense is raised, the burden immediately shifts to the plaintiff, who must rebut the defense by establishing a genuine issue of material fact as to whether the official's purported wrongful conduct violated clearly established law. *Id. citing id.*  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  If the defendant's conduct did violate a clearly established constitutional right, the court then asks and decides whether qualified immunity is warranted because the defendant's acts were "objectively reasonable" in light of the clearly established law at the time of the challenged action. *Brown*, 623 F.3d at 253.

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when defendant-official raises a qualified immunity defense in his individual capacity, a heightened pleading standard must be met by plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.[3]  In *Schultea v. Wood*, 47

_____

[3]  The Fifth Circuit subsequently decided not to apply *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)(striking down the heightened pleading requirements in § 1983 actions against municipalities) to claims against individual government officials in their individual capacities, regarding which "we are still bound by *Elliott* and its

F.3d 1427, 1429–34 (5ᵗʰ Cir. 1995)(*en banc*), discussing development of qualified immunity defense and pleading rules, the Fifth Circuit further opined, "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *See also Floyd v. City of Kenner, La.*, 351 Fed. App'x 890, 893 & n.2 (5ᵗʰ Cir. 2009).

### Substantive Law

**1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

**2.  Threats**

The Fifth Circuit has held that verbal threats by a police officer fail to constitute a constitutional violation

---

progeny." *Babb v. Dorman*, 33 F.3d 472, 477 (5ᵗʰ Cir. 1994).

cognizable under Section 1983. *Collier v. City of Bossier City*, Civ. A. No. 05-0795, 2007 WL 734737, *7 (5th Cir. Mar. 6, 2007), *citing Ganesan v. James*, 115 Fed. Appx. 670, 672 (5th Cir. 2004)("mere allegations of verbal abuse do not present an actionable § 1983 claim"); *Rhodes v. City of Homer*, No. Civ. A. 09-1115, 2010 WL 3613735, *5 (W.D. La. Sept. 14, 2010). "Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result[s] in a constitutional deprivation." *Lamar v. Steele*, 698 F.2d 1286 (5th Cir.), *cert. denied*, 464 U.S. 821 (1983). *See also Emmons v. McLaughlin*, 874 F.2d 351, 353-54 (6th Cir. 1989)(although patrolman's threat "I am going to get you, Larry Sturgil and Sam Sadoit," when Sturgil committed suicide, caused plaintiff to fear for his life, the court held that his "asserted fear from these spoken words . . . is not an actual infringement of a constitutional right, and thus, it is not actionable under section 1983"); *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir. 1992)("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991)("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest."); *Graham v. Connor*, 490 U.S. 386, 396 (1989)("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use

some degree of physical coercion or threat thereof to effect it.").

### 3. Excessive force under the Fourth Amendment

The right to be free from excessive force during a seizure is clearly established. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), *citing Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)(*per curiam*). "An officer seizes a person when he, 'by means of physical force *or* show of authority, has in some way restrained the liberty of person.'" *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004), *quoting Terry v. Ohio*, 392 U.S. 1, 18 (1968). Furthermore the government restraint on freedom of movement must have been intentionally applied. *Id.* To state a claim of excessive force in a seizure under the Fourth Amendment, the plaintiff must first show that he was seized and then demonstrate (1) an injury (2) resulting directly and only from a use of force that was clearly excessive, and (3) that the excessiveness of the force was clearly and objectively unreasonable. *Flores*, 381 F.3d at 396; *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008), *citing Flores*, 381 F.3d at 396. Such claims are fact intensive, with questions of "excessive" or unreasonable" depending on the facts and circumstances of each case. *Graham v. Connor*, 490 U.S. 386, 396 (198). The third prong depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The key issue is "whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Poole*, 691 F.3d at 628, *quoting Graham*, 490 U.S. at 397.  The analysis must be objective, and the court must view the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id., citing id.*  The court must balance the amount of force used against the need for that force and consider that police officers are often forced to make split-second judgments in situations that are tense, uncertain, and rapidly evolving.  *Graham*, 490 U.S. at 396.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officers's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.  Nevertheless, the Fifth Circuit has narrowed the test and held that "'[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting.' Therefore, any of the officers' actions leading up to the shooting are not relevant for purposes of an excessive force inquiry in this Circuit." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014), *quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001)("The excessive force inquiry is confined to whether the Trooper was in danger *at the moment of the threat* that resulted in the Trooper's shooting Bazan.  '[R]egardless of what

had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe at that moment, that there was a threat of physical harm [citations omitted [emphasis in original].'"), *citing Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985)(finding *no* liability where "only fault found against [the officer] was his negligence in creating a situation where the danger of such a mistake would exist").[4]   Furthermore the law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others." *Id*. at *4, *quoting Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2433 (2012). Furthermore, "'[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"   *Id., quoting Graham v. Connor*, 490 U.S. 386, 396 (1989).

The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force.  *Graham*, 490 U.S. at 399.  "Reasonableness considerations regarding the need for and the amount of force

---

[4]   In *Young*, the Fifth Circuit opined, "The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest.  There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation.  The government has the right to employ deadly force under some circumstances, and there are interests to be balanced in deciding the reach of constitutional demand."  775 F.2d at 1353.

necessary include . . . whether the suspect was actively resisting arrest or attempting to evade arrest." *Goldman v. Williams*, Civ. A. No. H-14-433, 2015 WL 7731413, at *7 (S.D. Tex. Oct. 9, 2015), *citing Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir, 2009)("The test for reasonableness must consider " . . . *whether [the suspect] is actively resisting arrest* or attempting to evade arrest by flight."). The reasonableness of the force must be judged from the view of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Moreover, the resulting injury must "be more than a *de minimis* injury[5] and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001);. *See, e.g., id.* at 315 (concluding that "handcuffing too tightly, without more, does not amount to excessive force"); *Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing," specifically "'acute contusions of the wrist' and psychological injury from being handcuffed"); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."). Only substantial psychological injuries are sufficient to meet the injury element

---

[5] While the Fifth Circuit not longer requires a "significant injury" for excessive force claims, the injury must be more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005).

of a claim for excessive force under the Fourth Amendment. *Flores*, 381 F.3d at 397-98.

The Fifth Circuit has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. *Hale v. Townley*, 45 F.3d 914, 919 (5ᵗʰ Cir. 1995)(and cases cited therein). *See also Kitchen v. Dallas County, Texas*, 759 F.3d 468, 480 (5ᵗʰ Cir. 2014)(To establish such a bystander liability claim, plaintiff must show that the defendant officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act.").

### 4. Unreasonable Search and Seizure Under § 1983

> What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. There he is protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has a right to know it will be secure from an unreasonable search or an unreasonable seizure.

*Hoffa v. U.S.*, 385 U.S. 293, 301 (1966).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend.

IV.  Unless there is consent or exigent circumstances,[6] "entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. U.S.*, 451 U.S. 204, 211-12 (1981), *citing Payton v. New York*, 445 U,.S. 573 (1980), and *Johnson v. U.S.*, 333 U.S. 10, 13-15 (1948).  *See also Osborne v. Harris County, Texas*, 97 F. Supp. 3d 911, 924 (S.D. Tex. Mar. 31, 2015)("'[S]earches and seizures inside a home without a warrant are presumptively unreasonable.'"), *citing Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).  Warrantless searches of a home by police are permissible when they obtain consent to search by a person qualified to give such consent.  *U.S. v. Zertuche-Tobias*, 953 F. Supp. 803. 817 (S.D. Tex. 1996), *citing U.S. v. Cooper*, 943 F.3d 140, 145 (5th Cir. 1995); *U.S. v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007)("Warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search."); *U.S. v. Jones*, 239 F.3d 716, 719 (5th Cir.), *cert. denied*, 534 U.S. 861 (2001).

It is also well established that a warrantless arrest under the Fourth Amendment must be based on probable cause, i.e., when the totality of facts and circumstances within a police

---

[6] "Exigent circumstances" excuse a police officer from having to obtain a warrant because "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."  *Brigham City Utah v. Stuart*, 547 U.S. 398, 403 (2006).  Exigent circumstances allow law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  *Id*.  The court examines the circumstances objectively, not from the officers' subjective viewpoint.  *Id.* at 404.

officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013); *U.S. v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). For probable cause there must be more than a bare suspicion of wrongdoing, but substantially less that what is needed to support a conviction. *Wadley*, 59 F.3d at 512. The purpose of requiring a warrant is to permit a neutral judicial officer to determine whether police have probable cause to make an arrest or conduct a search. *Id.* at 212.

Probable cause has been defined by the Supreme Court as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979), *quoted by Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000). Nevertheless, evidence that an arrestee was innocent of a crime does not necessarily dispose of the issue of probable case because probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009), *cert. denied*, 559 U.S. 1048 (2010). It is clearly established Fourth Amendment law that an arrest must be based on probable cause. *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015), *citing Club Retro, LLC v. Hilton*, 568 F.3d 181, 206, 204 (5th Cir. 2009). "[R]easonable mistakes by police officers,

even leading to the arrest of the wrong person, do not implicate the Fourth Amendment." *Id.* To allege a section 1983 claim, the plaintiff must show that the defendant did not have probable cause to arrest the plaintiff. *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). A defendant is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which the defendant was aware, there was a fair probability that the arrestee had committed or was committing an offense. *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004), *citing United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001)(explaining that probable causes's 'fair probability' standard requires more than a bare suspicion but less than a preponderance of evidence). Qualified immunity in the context of false arrest and unreasonable seizure can only be denied if there is "not even 'arguably' . . . probable case for the arrest." 127 F.3d 424, 444 (5th Cir. 1997). *See also Anderson*, 483 U.S. at 641 ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present and we have indicated that in such cases those officials--like other officials who act in ways they reasonably believe to be lawful--should not be held personally liable.").

     To overcome a qualified immunity defense, the plaintiff must show that the officers could not reasonably believe that they had probable cause to arrest the plaintiff for any crime. *Id.; Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 25, 2015)("[T]he

relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for any crime.").

**5. Conspiracy**

To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest (1) an agreement among individuals to commit a deprivation and (2) an actual deprivation in violation of § 1983 must take place. *Priester v. Lowndes City,* 354 F.3d 414, 420 (5th Cir. 2002); *Carr v. Montgomery County, Texas*, 59 F. Supp. 3d 787, 805 (S.D. Tex. 2014), *citing Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). For the first element a plaintiff must plead operative facts showing that the defendants agreed to commit an illegal act; bald allegations that a conspiracy exists are not adequate. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987); *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester*, 354 F.3d at 420. *See also Estate of Manus*, 2014 WL 1285946 at *20 (finding the statement of a deputy in the presence of other officers "we tried to break . . . his neck," alone, to be insufficient to create and genuine issue of material fact as to where there was an agreement and if so, who was a party to it."). "A conspiracy may be charged under § 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983." *Hale*, 45 F.3d 220.

*Allegations Against Stacey Smith and Christopher Myers in Their Individual Capacities In Plaintiffs' First Amended Complaint (#31)*

As noted, allegations in a complaint are not evidence and for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden." *Wallace*, 80 at 1047; *Johnston v. City of Houston, Tex.*, 14 F.3d at 1060.

The complaint asserts and there is no dispute that Defendant Christopher Myers ("Myers") and Stacey Smith were at all relevant times employed as Officers with the Huntsville Police Department.

Plaintiffs allege that "Myers had a history and pattern of abusing his office and power and was removed from the police force for excessive force and abuse of a detainee." #31, ¶ 3.1. Plaintiffs Melissa Carter ("Carter") and Chris Smith[7] allege that before the incidents at issue here, as evidenced by a video camera in Myers's police car, Myers, while on patrol, stopped a man, pushed his face against the lid of his truck in summer heat and held it there until the detainee was severely burned. During the investigation that followed, his superiors reviewed the tapes, but did not suspend or discipline Myers, and allowed him to continue patrolling, although they did refer the matter to the district attorney for presentation to a Grand Jury. *Id.* at ¶¶ 3.2-3.3. Myers was ultimately indicted by the Grand Jury for Felony Official Oppression based on this incident and pled guilty, agreeing never to work again in law enforcement. *Id.* at ¶ 3.23.

---

[7] Defendants refer to Smith as Christian Smith, while Plaintiffs identify his first name as Christopher.

The complaint recites that Defendant Officer Stacey Smith, in the midst of a bitter divorce from Plaintiff Officer Chris Smith, was a close friend of Myers and supported Myers despite his alleged misconduct.  They, "with malice and in furtherance of personal vendettas, which they subjectively and objectively knew to be violations of the Plaintiffs' civil rights," and other officers, discussed and encouraged each other in a plot to "get Chris [Smith]" and even warned Chris Smith that "Stacey, Myers and her crew are gunning for you." *Id.* at ¶¶ 4.2 and 3.5.  Stacey Smith purportedly threatened Chris Smith that she would use her position as a police officer against him.  *Id.* at ¶ 3.5.[8]

Plaintiff Melisa Carter (Carter") and Defendant Stacey Smith both live at the Connection Apartments in Huntsville, Texas. The complaint conclusorily asserts, without specific factual support or evidence, that Stacey Smith is easily offended and that Carter inadvertently offended Stacey Smith before the incidents at issue here.  *Id.* at ¶ 3.7.  On August 15, 2012, Stacey Smith saw Carter, a registered nurse, returning from work, and asked Myers, who was on patrol duty, to apprehend Carter on the "known pretext" that Stacey Smith had smelled marijuana around Carter's apartment. Carter was asleep when she was awakened by Myers' pounding on her door.  Myers accusingly asked why it took Carter so long to answer her door and then falsely stated to her that the police had received a complaint that a man had run out of Carter's apartment

---

[8] As the Court noted *supra*, as a matter of law threats do not constitute violations under § 1983.

and that an odor of marijuana had emanated from inside her apartment. *Id.*, ¶ 3.9. Carter responded that she had been asleep and needed to get her glasses and put on clothes before answering the door and insisted that no man or marijuana had been in her apartment. *Id.* at ¶ 3.10. As Myers entered Carter's apartment, Myers ordered Carter outside, where Stacey Smith was "waiting and gloating." *Id.* at ¶ 3.10. Carter then stepped back into her apartment and told Myers that she wanted to be present while he looked around because she was concerned about her dogs, which were in there. Myers became angry, shouted at Carter, and physically attacked her without provocation. *Id.* at ¶ 3.11. Overpowering Carter and causing her extreme pain, Myers forced Carter to bend over the eating bar in her apartment, forcefully pulled her arms behind her and immobilized them, and laid on top of her with his full body weight. Carter "was terrified and in shock" and suffered "extreme pain to Carter's neck, back, arms, and both wrists." *Id.* at ¶ 3.10. Without probable cause Myers then accused Carter of resisting arrest, handcuffed her so tightly that he caused extreme pain to her wrists, yanked her to her feet, led her out to her front porch, and violently shoved her, crying that "this was wrong," to the ground, while Stacey Smith watched, encouraged Myers' actions, and scoffed, "When a cop tells you what to do, you had better do it." *Id.* at ¶¶ 3.12-3.13.

Other officers and a drug dog appeared next, but those officers realized the arrest was not legitimate and left. The drug dog sat down at one point outside the apartment and an officer proclaimed it was a "hit," but left without taking the dog

-23-

into the apartment. *Id.* at ¶ 314. Carter, crying, handcuffed, and in extreme pain, accompanied one of the responding officers through her apartment, and then he left. *Id.* at ¶ 3.15. Myers, without informing Carter why she was arrested, transported Carter to the Walker County Jail, where she remained that night and part of the next day and where she was informed that she was charged by Myers and Stacey Smith with Interference with Public Duties.[9] *Id.* Despite the attack on Carter, which was witnessed in part by unnamed senior officers, the City retained Myers on street patrol. *Id.* at ¶ 3.16. Carter filed a timely complaint against Myers and Stacey Smith with the City. *Id.* at ¶ 3.16.

As a result of the attack against her, Carter purportedly suffered physical injury that required medical treatment, caused her mental anguish, and left her terrified of living in the same apartment complex with Stacey Smith, who regularly watched Carter. *Id.* at ¶ 3.24.

On or about August 20, 2012 at approximately 11:25 p.m., Chris Smith was driving southbound on State Highway 75 in the City of Huntsville when he was hit by a tractor trailer rig making a wide right-hand turn from the inside lane of the street. Officers arrived at the scene, investigated, and ticketed the driver of the

---

[9] *See* Tex. Penal Code Ann. § 38.15(a)(1)("A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." "It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.*, § 38.15(d). *See Haggerty*, 391 F.3d at 656-58, 659-60 (dissent).

rig for lack of insurance and lack of trailer license plates, but not for the accident. *Id.* at ¶ 3.17. Chris Smith subsequently won a suit for property damages to his vehicle from the accident in Local Justice Court. *Id.*

Meanwhile, on duty across town, Myers learned either from Stacey Smith or from listening to the police radio that Chris Smith was involved in a traffic accident. In furtherance of his and Stacey Smith's plot to "bust" Chris Smith, Myers rushed to the scene and skidded to a stop near the accident. *Id.* at ¶ 3.18. Although Chris Smith had already been questioned and released by responding officers, Myers ordered Chris Smith to step on a line to test for alcohol because Stacey Smith had told Myers that Chris Smith always drinks and drives. *Id.* ¶¶ 3.18-3.19. Chris Smith, aware of his estranged wife's relationship with Myers, objected to being harassed, but took the test and passed. *Id.* at ¶ 3.19.[10] Myers then ordered Chris Smith to place his hands on his vehicle and submit to a physical search, as he did. *Id.* at ¶ 3.20. Myers next ordered Chris Smith to turn around and hand Myers the pocket knife Chris Smith had in a sheath on his belt. Chris Smith complied, and Myers then pointed his firearm into Smith's face. *Id.* at ¶ 3.20. Myers arrested Smith and took him to jail, where Chris Smith spent the night, and Myers charged Chris Smith with Driving Under the Influence. *Id.* at ¶ 3.21.

---

[10] Defendants state that after administering the field sobriety tests to Chris Smith, Myers concluded that Plaintiff Smith had been driving drunk on August 20, 2012. #32 at p. 12.

The next morning Stacey Smith and Myers celebrated at the police station in front of the department staff and Chris Smith's children.   They exchanged "high fives," making such remarks as "I told you I would bust the [expletive]" and "you the man."  *Id.* at ¶ 3.22.

### Defendants' Motion for Summary Judgment (#38)

According to Defendants' very different story as presented in their motion, supported by substantial, attached evidence, on August 15, 2012 Hollie Hess, the Connection Apartment complex's manager, who was familiar with the ventilation system at the complex and who lived adjacent to Carter's apartment, informed Police Officer Stacey Smith, who worked part-time at the complex as a courtesy officer, that Hess smelled an odor of marijuana coming from Carter's apartment into Hess's through the ventilation system.   Hess invited Stacey Smith into Hess's apartment, where Smith also smelled marijuana.   Hess requested that Stacey Smith speak to Carter about her illegal conduct.   Because more than one police officer is required for such a matter,[11] Stacy Smith then contacted Myers, who was on duty as a patrol officer in the area at the time, for assistance in investigating the complaint. Officers Smith and Myers went to Carter's apartment and knocked on the door for several minutes before Myers finally opened it. Myers informed Carter of the report of the odor of marijuana emanating from her apartment.   At first Carter consented to a

---

[11] Exhibit 1, Decl. of Christopher Myers at ¶ 9; Exhibit 2, Decl. of Stacey Smith at ¶¶ 9-10; Exhibit 7, Decl. and expert report of Mark C. Young, a retired Special Agent of the Federal Bureau of Investigation, at pp. 6-7.

search of her apartment by Myers, who was wearing a Huntsville police uniform.  While investigating in the apartment, Myers also smelled the odor of marijuana and a large amount of air freshener, as well as found three vents operating to remove air from inside the apartment.[12]   Before he was done his inspection, however, Carter withdrew her consent for the search and walked into the apartment toward Myers.  Myers then asked Carter to step outside the apartment so that it could be secured while officers obtained a search warrant.  Carter refused to leave.  Myers then attempted to lead her out, but Carter resisted, using force against Myers. Myers pushed Carter against a kitchen counter to gain control of her, and Smith attempted to assist in handcuffing one of Carter's wrists to stop the need for further use of force; they succeeded in handcuffing her, a standard police tactic to control a suspect.[13] They contend Carter's actions created probable cause to arrest her.

Defendants point to two applicable criminal statutes for the arrests of Carter: (1) one addressing Interference with Public duties when, with criminal negligence, a person interrupts, impedes or otherwise interferes with a peace officer while the officer is performing a duty or exercising his authority, such as

---

[12] Exhibit 1, ¶¶ 11-13; Exhibit 2 at ¶¶ 11-17; Exhibit 6, Huntsville Police Department Statement of Holli Hess; Ex. 7 at pp. 4-5; Exhibit 10, Deposition of Melissa Carter at p. 38, l.14-p.40, l.14.

[13] Ex. 1 at ¶¶ 16-17; Ex. 2, ¶¶ 16-21; Ex. 7 at pp. 6-7; Ex. 10, p. 40 l.22-p. 41 l. 24, p. 43 ll. 1-24, p. 44 l.5-p. 45 l. 9; p. 45 l. 16-p. 52 l.20, p. 53 l. 11-p. 57 l.18, p. 58 l.1-p. 63, l.4.

Myers' investigation of the report of illegal drugs and attempt to secure the apartment so he could obtain a search warrant; the other, for the offense of resisting arrest, search or transportation of the actor by force.  Defendants assert that an objective officer could reasonably conclude there was fair probability to believe that Carter committed either one or both of these two crimes and that it was appropriate to keep the status quo by handcuffing her.  Exs. 1,2,3, 7, 10, and 18 (Internal investigation documents).

As for Plaintiff Christopher Smith, Defendants claim that after drinking alcohol, he drove a motor vehicle and had a traffic accident.  Huntsville Police Officers Thomas Dawson, Kenneth Posey, and Bryant Wells were sent to investigate the accident and, based on their training through instruction approved by the Texas Commission of Law Enforcement ("TCOLE"), suspected that Smith was driving while intoxicated, as did the driver of the other vehicle in the accident.  Knowing that Myers often conducted DWI investigations, Posey and Dawson called Myers to the scene for that purpose.[14]  Exs. 1,2,4,5,7,8, and 9 at p.12 ll. 2-24, p. 13 ll. 20-25, p. 14 l.11-p.15 l.23, and p. 16 l.23-p. 17 l. 4.

Myers administered several field sobriety tests at the accident scene.  Myers' conduct during the tests was recorded, as was the entire event, and illustrates that he responded to assist the other officers on the scene in their investigation.  There is

_____

[14] Exhibits 1; 2; 4, Decl. of Officer Thomas Dawson; 5, Decl. of Officer Kenneth Posey; 7; 8 disk;9, Dep. of Christian Smith p. 12 ll. 2-24, p. 13 ll. 20-25, p. 14 l.11-p.15 l. 23, p. 16 l. 23-p. 17 l.4.

no sign on the recording of animosity between Chris Smith and any of the investigating officers.   The recording shows that Chris Smith admitted to having drunk two beers and that he had significant difficulty in maintaining his balance.   Exhibit 8. Defendants state that there is no evidence that Myers or any reasonable officer at the scene lacked probable cause to reasonably believe that Myers had driven while intoxicated.   Exs. 1-5, 7, 8, 9 p. 23 l.7-p. 24 l.4.   Although Smith denies he was drunk, the material issue is not what he thought, but whether any objective police officer at the scene could have reasonably believed that Smith was intoxicated.   Defendants maintain that the officers' testimony and the recorded evidence prove that they had probable cause to arrest Smith for drinking while intoxicated.

     Emphasizing that the conduct of each officer must be examined independently in determining the applicability of qualified immunity,[15] Defendants move for summary judgment on the claims against Stacey Smith.   With respect to Plaintiffs' allegation that she acted with improper intent, Defendants correctly argue that the subjective motivation of the police officer is irrelevant under the Fourth Amendment and § 1983. *Whren v. United States*, 517 U.S. 806, 812 (1996)(With the exceptions for inventory searches and administrative inspections, we have repeatedly held that an officer's motive does not invalidate objectively justifiable behavior)(and cases cited therein); *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011)("Fourth

---

[15] *See, e.g., Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

Amendment reasonableness is 'predominantly an objective inquiry.' We ask whether 'the circumstances, viewed objectively, justify [the challenged] action. If so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts.")(citations omitted). Such a contention cannot support a claim under the applicable objective reasonableness standard. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)("If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. . . . [E]ven if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.).

Second, Defendants maintain that Stacey Smith was not involved in unconstitutional conduct that violated Chris Smith's constitutionally protected rights. The uncontroverted record demonstrates that Myers arrested Chris Smith only because Myers found probable cause in sobriety test results that showed Chris Smith was driving while intoxicated when he had the accident. Exs. 1 and 2. Myers did not arrest Chris Smith based on any plan or conspiracy with Stacey Smith. Stacey Smith never asked Myers or any other officer to detain or arrest Chris Smith without legal

cause.   Stacey  Smith  did  not  know  where  Chris  Smith  would  be
driving,  did  not  inform  anyone  where  Chris  Smith  could  be
arrested,  nor  could  she  have  been  expected  to  predict  that  Chris
Smith  would  be  involved  in  a  traffic  accident  after  drinking  beer
and  driving.   The  record  demonstrates  that  Chris  Smith  was
arrested  only  after  the  accident,  after  Officers  Posey,  Wells,  and
Dawson  called  Myers  to  the  scene  of  the  accident  for  assistance  in
investigating  Chris  Smith's  suspected  intoxication,  after  Myers
smelled  alcohol  on  Smith's  breath,  after  Smith  admitted  he  had
been  drinking,  and  after  the  field  sobriety  tests  revealed
possible  impairment  by  intoxication  and  thus  probable  cause  for
his  arrest.   Exs.  1  and  2.   Defendants  argue  that  under  the
circumstances,  an  objective  police  officer  could  have  reasonably
believed  that  Stacey  Smith's  conduct  as  to  Chris  Smith  was
permissible  under  clearly  established  law.   Bearing  the  burden  of
disproving  the  presumption  of  Stacey  Smith's  qualified  immunity,
Chris  Smith  has  not  rebutted  that  presumption  by  showing  her
personal  involvement  in  the  arrest  nor  by  establishing  that  no
objective  police  officer  could  reasonably  have  believed  that  her
conduct  as  to  Chris  Smith  was  within  the  range  of  permissible
actions.

        Most  significantly,  Defendants  also  argue  that  Stacey
Smith  did  not  violate  Carter's  rights  because  Carter's  rights  were
not  violated.   Even  if  Myers  had  violated  Carter's  rights,  Stacey
Smith  did  not.   The  evidence  proves  that  Smith  believed  probable
cause  existed  for  Myers  to  undertake  the  investigation  that  he
made  and  to  take  the  actions  he  took  and  that  not  Smith,  but

Myers, made the decision to detain and arrest Carter. Exs. 1, 2, and 7. Smith's personal involvement was restricted to helping fasten one handcuff on Carter, who was resisting Myers' attempt to restrain her. Smith explained that she understood that an officer may temporarily detain an individual in an effort to preserve safety and maintain the status quo during the course of an investigation, that the use of handcuffs is not considered a use of force, but merely standard police procedure to prevent injury and the need for use of force, and that Myers' decision to employ handcuffs was a reasonable choice that was necessary to gain control of the situation; Special Agent Young agreed. Exs. 1-3, 7, 10, and 18 (Internal investigation of Carter's complaint arising out of her arrest). *See Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010)(A claim that handcuffs were too tight, without more, does not amount to excessive force)(*citing Glenn v. City of Tyler*, 242 F.3d 307, 314 (2001)(holding that "handcuffing too tightly, without more, does not amount to excessive force"), and *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)("incidental injuries that occur in connection with the use of handcuffs to affect an arrest do not giver rise to a constitutional claim for excessive force"), *cert. denied*, 562 U.S. 1003 (2010); *Tarver*, 410 F.3d at 752 ("As Tarver does not allege any degree of physical harm greater than *de minimis* from the handcuffing, we find that he has not satisfied the injury requirement of a § 1983 claim."); *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996)(*en banc*)(handcuffing is a routine police procedure), *cert denied*, 519 U.S. 813 (1996).

Defendants assert that an objective police officer would have believed that Officer Smith's conduct, as it related to Carter, was permissible under clearly established law. Carter cannot identify any legal authority that established that Stacey Smith violated clearly established law. Nor does she identify any evidence that no objective police officer could have reasonably believed that assisting another officer by applying a handcuff during a physical struggle to prevent the need for the use of force was within the bounds of acceptable police conduct under the totality of the circumstances in this case. Since the law did not put Smith on notice that her specific conduct would be unlawful, she is entitled to qualified immunity.

Similarly Defendants maintain that Myers did not violate Plaintiff Chris Smith's rights because probable cause supported his arrest for driving while intoxicated. When probable cause exists, an arrest in not unreasonable even if it is later found that the arrestee was innocent. *Ray v. Pierson*, 386 U.S. 547, 555 (1967)("Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved."). Here the record does not demonstrate that Chris Smith was innocent. Defendants point out that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "The probable cause issue must be analyzed under the 'totality of circumstances' as to whether there is a

'fair probability' that a crime is occurring." *U.S. v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)(quoting *Gates*).   "[T]he requisite 'fair probability' is something more than bare suspicion, but need not reach the fifty percent mark." *Garcia*, 179 F.3d at 269.  The summary judgment record demonstrates a fair probability that Chris Smith drove while intoxicated.

Defendants note that probable cause and qualified immunity constitute two distinct forms of defenses to claims against police officers in making an arrest. *Ray*, 386 U.S. at 556-57; *Pfannstiel*, 918 F.2d at 1183.  A police officer who "'reasonably but mistakenly conclude[s] that probable cause is present'" is entitled to qualified immunity. *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994), *quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Therefore if probable cause was lacking for Chris Smith's arrest, Myers was still protected by qualified immunity because Chris Smith cannot show that Myers was on notice that the arrest he made based on suspected probable cause by three well-trained policemen was so clearly lacking in fair probability that the arrest violated clearly established law.  *Id.*  If officers of reasonable competence disagree as to whether the arrest violated Chris Smith's rights, Myers was entitled to judgment based on immunity even if probable cause was lacking. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Nor, insist Defendants, did Myers violate Carter's rights.  The evidence demonstrates a fair probability that Carter interfered with public duties and resisted detention and arrest. The propriety of an arrest must be viewed from the perspective of

-34-

a reasonable law enforcement officer on the scene. *Graham*, 490 U.S. at 396.  Expert Special Agent Young, after reviewing the facts, determined that the standard of fair probability existed in Carter's arrest for interfering with public duties of a peace officer performing his duty of investigating and arresting Carter for possession of illegal drugs.  Ex. 7.  Huntsville police Lieutenant Jim Barnes and Chief Kevin Lunsford evaluated the propriety of Myers' actions as to Carter (Ex. 2,3, and 18) found his actions permissible.  There is no controverting evidence provided from the perspective of a reasonable officer on the scene that probable cause was lacking to detain and arrest Carter.

Carter also has no evidence suggesting that the force used in her detention and arrest was unreasonable, i.e., that she sustained an injury from force that was excessive to the need or objectively unreasonable.  Rather, Special Agent Young's testimony and the evaluation done by Lt. Barnes and Chief Lunsford support the reasonableness of the force used to detain and arrest Carter.  Exs. 7, 2, 3, and 18.

### Plaintiffs' Response (#40)

Plaintiffs first highlight Myers' previous acts and reprimands (Exs. 7 (Letter of Counseling from Chief of Police to Myers for incident on June 10, 2010), 6 (Employee Conduct Form counseling Myers about inappropriate email), 10 (Employee Conduct Form counseling Myers for driving improperly without utilizing emergency equipment), 11 (103-page Huntsville Police Department Internal Investigation 13-001 and 101-page Official Oppression report by Huntsville Police Department dated 8/10/12)), and 12

(Texas Commission on Law Enforcement's acknowledgment of Myer's surrender of his TCOLE license pursuant to his criminal plea bargain agreement) since 2010, demonstrating that he was a reckless and dangerous police officer who did not follow police department policies.

Regarding the August 10, 2012 incident involving Carter (Ex. 1--Arrest Report), Plaintiffs assert that after Carter withdrew her consent to his search of her apartment, Myers physically assaulted Carter in a manner similar in two ways to an assault of another suspect by him five days earlier:  in pulling upwards and backwards the arms of a handcuffed suspect, causing injury (Exhibit 3 (Carter's deposition at pp. 41-60) and Ex. 13 (Carter's sworn statement of claims against the City of Huntsville); the charge of interference with duty of police officer by falsely alleging that Carter tried to kick him while being restrained (Ex. 3 at pp. 41-60) and Ex. 13, Ex. 1 bates no. 4, Ex. 11, bates no. 900). Plaintiffs claim that after Carter was handcuffed and taken outside, officers arrived with a drug dog but "it was determined that a search of Ms. Carter's home was not necessary." #40 at p. 6. The charge against Carter for Interference with Public Duties was subsequently thrown out by the Walker County District Attorney, who stated that as soon as Carter withdrew her consent, Myers and Stacey Smith should have left her house. Ex. 2 (Complaint Status form signed by District Attorney David Weeks, who was not present at the scene),[16] 14 (Letter to

_____

[16] Plaintiffs misrepresent the content of the document, which is somewhat ambiguously titled "Complaint Status,"

Whom It may Concern signed by District Attorney's Intake Coordinator stating that Carter "was arrested for the offense of "INTERFER W/PUBLIC DUTIES.  However, this office rejected the case. [*sic*]")).  Plaintiffs state that in the days after her arrests, Carter saw Stacey Smith in public and talked to her about the arrest.  Stacey Smith told Carter, "The next time an officer told me to be quiet to shut my mouth, I should shut my mouth." Ex. 3, Carter Dep. at p.11.  Plaintiffs contend that this statement and the official statement Stacey Smith made in the arrest report (Ex. 1, bates no. 000005, but it is unclear what Plaintiffs are referencing), "demonstrates Ms. Smith's approval and participation in Myer's false arrest and assault--merely because Ms. Carter had the temerity to protest the warrantless search of her home.  Ms. Carter suffered injuries to her wrist, back, neck/shoulder areas as a result of this attack." #40, p. 6, citing Ex. 3, pp. 69-80, and Ex. 13.

Regarding the incident with Chris Smith on August 20, 2012, Plaintiffs assert that even though

> another officer was conducting the crash
> investigation and other officers had already
> arrived on the scene and had the investigation
> well in hand, Mr. Myers rushed to the scene of
> the accident and immediately began escalating
> tensions.  (Exhibit 5, pp. 23-24[17], Exhibit

---

identifies Carter as the complainant and Myers as the officer, and simply states without any context, "once consent was revoked, it was duty of officers to leave the premises [*sic*]"  It could just as easily be a description of Carter's complaint and not the District Attorney's own determination.

[17]   Ex. 5 is Chris Smith's Deposition, but these identified pages are merely part of an index of words used in the deposition and not supportive of Plaintiffs' claim.

13[18])[.]    He then drove Mr. Smith to the
police station where Officer Smith was waiting
and, in the presence of Mr. Smith's son, "high
fived" Officer Smith's husband and said "we
got him."   (Exhibit 4, pp. 42-45)[.]   All

---

[18]  Affidavit of Chris Smith, which states in the third
paragraph,

"After I had given my statement regarding the
car  accident  to  the  officer  who  was
conducting  the  accident  investigation  (and
who  ultimately  wrote  the  police  report
regarding the accident), Mr. Myers drove to
the scene of the accident in his patrol car,
squealing his tires as he drove into the
parking lot where we were all (the witnesses,
drivers and police who initially investigated
the scene) were gathered after the accident.
Officer  Myers  screeched  to  a  halt  in  the
parking lot, got out of his car, and walked
directly to me.   He then conducted a field
sobriety test.  At one point he asked that I
hand him my pocket knife out of my back
pocket and when I reached to hand it to him,
he put his pistol in my face.    He then
arrested  me,  even  though  I  was  completely
sober, put me in hand cuffs, and put me in
the back of the police car.   When he pushed
me into the police car after arresting me, he
whispered in my ear "got you bitch."

The Court notes that Chris Smith's account clearly does not
qualify as the view of an objective and reasonable police officer
on the scene to rebut Myers' presumption of qualified immunity.
Moreover he fails to allege a constitutional violation of his
rights.     As  noted  verbal  threats  and  intimidation  do  not
constitute  constitutional  violations  under  section  1983.
Furthermore, as far as the knife allegation is concerned, he
forgets that the incident was videotaped, disc included in the
attached evidence:  "when there is video evidence available in the
[summary judgment] record, the court is not bound to adopt the
nonmoving party's version of the facts if it is contradicted by
the record, but rather should 'view[] the facts in the light
depicted by the videotape.'" *Harris v. Serpas*, 745 F.3d 767, 771
(5th Cir. 2014) *(quoting* Scott v. Harris, 550 U.S. 372, 381 (5th
Cir. 2007), and *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th
Cir. 2011)("Although we review evidence in the light most
favorable to the nonmoving party, we assign greater weight, even
at  the  summary  judgment  stage,  to  facts  evident  from  video
recordings taken at the scene."), *cert. denied*, 135 S. Ct. 137
(2014).

> charges against Mr. Smith for this alleged intoxication were dropped by the D.A.'s office on April 13, 2013. (Exhibit 15)[.] Because Mr. Smith was completely sober, the charges against Mr. Smith were ultimately dropped, and Mr. Meyers and Officer Smith were caught celebrating the arrest of Mr. Smith, it appears certain that Mr. Smith was one more victim of the overly aggressive Mr. Myers, working once again in conjunction with his co-celebrator and conspirator, Officer Smith.

Plaintiffs also state, without any supporting evidence, that Chris Smith passed the "over-lengthy" sobriety test. #50 at p. 11.

Plaintiffs insist that, on the pretext that Officer Smith had seen a suspicious man running out of Carter's apartment and smelled marijuana in order to accost and assault Carter, the warrantless search of Carter's apartment by Myers and Stacey Smith violated the Fourth Amendment. Furthermore Plaintiffs contend that Myers and Smith used excessive force in the arrest. The subsequent search revealed the pretext lacked validity--no one was present in the apartment and no marijuana was found, nor was the running man ever found. Plaintiffs charge that "Myers became enraged and attacked Carter, throwing her against the bar in her kitchen area, pinning her and hand-cuffing her, to later yank her up by overtight cuffs and throw her onto the balcony walkway outside. Exhibit 13 [Carter's Sworn Statement], Exhibit 3 [Carter Dep.], pages 39-60)[.]" They state that Carter was taken to the station without being informed of the reason why she was under arrest. She was subsequently released and the charges were dismissed. Exs. 13 (Carter's sworn statement) and 14 (District Attorney's Office rejected the case of Carter's arrest for Interference with Public Duties). Plaintiffs maintain that Myers

had no legitimate reason for being at the scene and therefore Carter could not have interfered with his duties. Moreover they suggest that she was assaulted and arrested in retaliation for withdrawing her consent to Myer's search of her apartment. Ex. 3, pp. 39-68. They state that Myers and Smith then went after Chris Smith.

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures"; in inquiring whether the right against unreasonable seizures under the Fourth Amendment was violated, the court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014), *quoting Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Incorrectly insisting that in qualified immunity cases the court must draw inferences in favor of the nonmovant with their only evidence being their own statements, Plaintiffs Carter and Chris Smith argue that the officers here cannot be entitled to that defense for "conspiring to accost, assault and arrest hapless citizens for personal reasons, or just to bully them." #40 at p. 15. They conclude, when one weighs "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," the only result can be the conclusion that "the intrusion of being assaulted (one with a deadly weapon) and then taken and jailed is overwhelming when weighed against the personal

animus of two officers which is hardly a governmental interest justifying the assaults and arrests more like some third world dictatorship than here in the United States where we still have a Constitution and laws that protect us from this sort of thing." #40 at pp. 15-16.  Both the right to be free from excessive force and the right to be free from a warrantless arrest are well established, as all officers know, they note.

### Defendants' Reply (#42)

Defendants reply that Plaintiffs have failed to provide any evidence of Officer Stacey Smith's personal involvement in unconstitutional conduct, but only broad, unsupported statements, as Plaintiffs did in their complaint.  Moreover Defendants point out that Plaintiffs urge the Court to reject controlling authority, *Meadours*, 483 F.3d at 421-22 (the court must examine the actions of defendants individually in the context of qualified immunity), and to hold Stacey Smith liable for Myers' claimed misconduct, although Defendants maintain that Myers did not violate Carter's constitutional rights.  *Tarver*, 410 F.3d 752 ("handcuffing too tightly, without more, does not amount to excessive force"); *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir. 1992)("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant.").

Even if the summary judgment revealed any unconstitutional act by Stacey Smith, she is still entitled to qualified immunity because Plaintiffs have not met their burden to disprove her claim to qualified immunity.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)("Although [qualified immunity is]

nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised. "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."), *quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Plaintiffs have not identified any material evidence or relevant legal authority that could reasonably be construed to refute Officer Smith's qualified immunity defense. Nor have they identified any evidence which shows that no arguable basis for Officer Smith's actions existed or that no officer could have reasonably believed her conduct comported with her legitimate discretion under clearly established law. Instead all the relevant evidence shows the opposite.

Chris Smith's claim against Myers is based on Smith's personal denial of driving drunk in a sham affidavit that contradicts his own admission at the scene of the accident of having drunk two beers (#39, Ex. 8) and his deposition testimony admitting that he drank alcohol before the accident (#38, Ex. p at p. 8 ll. 15-18). The relevant standard is whether an objective law enforcement on the scene, like Officers Dawson and Posey, would have reasonably perceived the circumstances as evidencing a fair probability that Chris Smith had driven to the accident while intoxicated. The evidence here demonstrates a fair probability

that Plaintiff Chris Smith was subject to arrest and disproves his subjective claims.

Chris Smith has also failed to point to any authority or evidence demonstrating that no objective police officer could have reasonably believed that Myers' decision to arrest Chris Smith for suspected intoxication under the circumstances of this case was within the bounds of his discretion. Myers' decision was separately validated by five other well-trained policemen.

Not only did Myers not violate Carter's rights, but her own conduct ultimately led to her arrest and the minimal force used to make that arrest: she delayed in opening the door to her apartment even though Myers knocked on it for several minutes (#38, Ex. 10, p. 31 l.19-p.32 l.16; p. 33 l. 12-p. 37 l.20); she initially consented to the search and Myers asked her to step outside during the search (#38, Ex. 10, p. 38 ll. 6-8; p. 39 ll. 7-13); during the search she re-entered the apartment and Myers asked her to step outside again, but she refused to do so (#38 Ex. 10, p. 41 ll. 19-21; p. 41 ll. 17-24); and when Carter approached him inside the apartment, he grabbed her arm, leaned her torso over a bar so he could apply handcuffs to control her and told her to stop resisting (#38, Ex. 10, p. 44 l.5-p.45 l.9; p. 45 l. 16-p. 47 l.6; p. 48 l. 21-p. 49 l. 10; p. 52 ll. 15-20; p. 53 l. 11-p. 54 l. 16; p. 54 l. 17-p. 55 l.9). Carter's admitted actions provide fair probability that she interfered with public duties and resisted detention and arrest. Carter fails to address Defendants' evidence that no law enforcement professional who has evaluated the facts of this case has concluded otherwise.

There is no evidence from the perspective of a reasonable officer on the scene that demonstrates that probable cause was lacking to detain and arrest Carter. Therefore Myers is entitled to judgment on Carter's claim of unconstitutional arrest.

Carter, like Chris Smith, also failed to identify any authority or evidence showing that no objective police officer could reasonably have believed that Myers' conduct was permissible under clearly established law. Therefore Myers is entitled to summary judgment in his favor.

### Defendants' Objections to Plaintiffs' Exhibits (#41)

Defendants urge the Court to exclude "Plaintiffs' wholesale dump of irrelevant evidence into the summary judgment record" under Federal Rules of Evidence 401 and 402. Plaintiffs are required to designate specific facts and portions in the record supporting their claims, and the district court is not required to scour entire deposition transcripts in an effort to seek out potentially admissible evidence. *Jones v. Sheehan Young and Culp*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Besides irrelevant evidence, Plaintiffs' Exhibit 4 is an inadmissible deposition transcript of Stacey and Chris Smith's son's testimony in their divorce suit.

### Court's Decision

The Court finds that Defendants' objections to Plaintiffs' evidence are well taken. Nevertheless since there is no jury involved in summary judgment, since the evidence fails to support Plaintiffs' claims, and because the Court has, though not

required to, at least skimmed all of it and has not based its decision on any irrelevant or inadmissible evidence, the Court finds a formal exclusion unnecessary.

The law as applied to the circumstances of the case is clear here and the Court finds that the admissible evidence fully supports Defendants' motion for summary judgment, while Plaintiffs' pleadings and evidence consist of their own subjective evaluations of what took place in their interactions with Myers and Stacey Smith, instead of employing the required perspective of an objective, reasonable police officer on the scene. Similarly Plaintiffs rely on an erroneous shifting burden of proof, applying the general summary judgment standard under Rule 56, rather than the "altered" one for responding to the assertion of a qualified immunity defense under *Brown*, 623 F.3d at 253 and *Michalik*, 422 F.3d at 262: once the defense is raised, the burden immediately shifts to the plaintiff, who must rebut the defense by establishing a genuine issue of material fact as to whether the official's purported wrongful conduct violated clearly established law with facts and evidence showing that (1) the defendants committed a constitutional violation under the clearly established current law and then (2) that qualified immunity is warranted because the defendant's acts were "objectively reasonable" in light of that clearly established law at the time of the challenged action. Plaintiffs have failed to prove a constitutional violation occurred, while Defendants have demonstrated both by deficiencies in Plaintiffs' pleadings and in their evidence that Plaintiffs failed to show a constitutional

-45-

violation in Defendants' actions as to either Plaintiff.  Nor have Plaintiffs shown that any objective, reasonable policeman with the same information that Defendants possessed would have found that Defendants' actions toward Carter or Chris Smith were impermissible under clearly established law.

Myers is initially shielded from any claims of wrongful search of Carter's apartment because Carter consented to his search of her apartment.  Moreover since Myers was told by Officer Stacey Smith of the complex manager Holly Hess's complaint about the odor of marijuana emanating from Carter's apartment into Hess's apartment,[19] with Stacey Smith's personal confirmation of that fact, he had probable cause to detain Carter in light of the clearly established drug laws at the time.  When she refused to leave the apartment to allow him to obtain a search warrant without any disturbance of the scene, he had probable cause to restrain her from remaining in the apartment and ultimately to handcuff her and arrest her for physically resisting his request. Nor, as a matter of law, did any *de minimis* injury from the handcuffing of Carter satisfy the injury requirement for a constitutional violation of excessive force in the context of a detention and arrest.  *Tarver,* 410 F.3d at 751-52; *Freeman*, 483 F.3d at 417.  Similarly, only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment.  *Flores*, 381 F.3d at 397-98. While Carter has conclusorily pleaded and stated her own sworn

_____

[19]  #38, Ex. 6 is Holli Hess's affidavit regarding the incident.

statement (#40, Ex. 13 at p. 3) that she is "suffering constantly from physical pain in my wrists and back and severe emotional and mental distress.  I am currently receiving medical attention for these conditions," she presents no evidence to support these claims.

Plaintiffs' admissible evidence against Officer Stacey Smith in her individual capacity does not show that Stacey Smith personally participated in the alleged unlawful arrest of Chris Smith or Myers or the alleged use of excessive force against Myers.  Plaintiffs do conclusorily claim that Stacey Smith conspired with and provided information, encouragement, and direction to Myers, who acted upon that support.

Under Texas law "[t]he elements of false arrest and false imprisonment [a willful detention without consent and without authority of law] are similar enough to be indistinguishable." *Villegas v. Griffin Indus.*, 975 S.W. 2d 745, 754 (Tex. App.--Corpus Christi 1998, no pet.); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W. 3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W. 2d 374, 375 (Tex. 1985).  The Texas Supreme Court has clearly stated that under Texas law, "liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention.  False imprisonment's first element may thus be satisfied by conduct that is intended to cause one to be detained, and in fact, causes the detention, even when the actor does not participate in the detention.  We have sometimes referred to this causation standard as 'instigat[ion]'

-47-

of the false imprisonment." *Rodriguez*, 92 S.W. 3d at 507. Nevertheless, "to prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest. . . . "the equivalent, in words or conduct, of "Officer arrest that man!'" *Id.*, citing *Restatement (Second) of Torts* § 45 cmt. c. Here Stacey Smith was not present in the scene and did not know how Carter reacted to the request to remain outside while Myers went for a warrant to search her house, so she had no knowledge of the arrest or its basis. There is no allegation that Stacy Smith directed Myers to arrest Carter.

To support § 1983 liability on a theory of conspiracy a plaintiff must allege facts that suggest that two or more conspirators reached an agreement to deprive the plaintiff of (1) a constitutional right (2) "under color of law,"[20] i.e., of any statute, ordinance, regulation, custom, or usage of a State or Territory. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970); *Hey v. Irving*, 161 F.3d 7, (5th Cir. 1998). "The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of the petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful." *Id.* at 152.

The elements of a civil conspiracy under Texas law are "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or

---

[20] As police officers, Stacey Smith and Myers are state officials acting under Texas law.

more unlawful. overt acts; and (5) damages as the proximate result.' A plaintiff asserting such a claim must prove that the defendants conspired to accomplish an unlawful purpose or used unlawful means to accomplish a lawful purpose." *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005). Plaintiffs who bring conspiracy claims under civil right statutes "must plead the operative facts on which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). "The complaint must include specific factual allegations showing a prior agreement, plan or meeting of the minds" between or among the conspirators to commit an illegal act. *Hey v. Irving*, 161 F.3d 7, No. 97-60816, 1998 WL 723819, *2 (5th Cir. Oct. 2, 1998). The complaint here is only conclusory. Because Stacy Smith was not present at the scene of, nor personally involved in, either of Myers' confrontations with Plaintiffs, Plaintiffs' failure to adequately plead a conspiracy claim against the two officers means Stacy Smith cannot be liable for Myers' conduct under § 1983. The Court finds not only that Plaintiffs plead insufficient facts to show that Myers and Stacey Smith had a meeting of the minds, "a unity of purpose, common design, and understanding" that Myers would violate Plaintiffs' constitutional rights. More importantly, even if Plaintiffs had adequately pleaded a meeting of the minds to violate Plaintiffs' constitutional rights under the Fourth or Fourteenth Amendment, as indicated in the analysis above, Plaintiffs fail to allege and prove overt acts that actually violated Plaintiffs' constitutional

rights or used unlawful means to accomplish a lawful purpose in furtherance of the conclusorily alleged conspiracy, and therefore fail to prove damages.  Thus they fail to prove a conspiracy cause of action.

In sum, for the reasons and the law discussed above, and because the Court fully agrees with Defendants' position, arguments, and legal authority, the Court

ORDERS that Defendants' motion for summary judgment is GRANTED.  A final judgment shall issue by separate instrument.

**SIGNED** at Houston, Texas, this  30th  day of  September, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE